# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**UNITED FACULTY OF FLORIDA, et al.,**

       *Plaintiffs*,

**v.**                      **Case No.: 4:21cv271-MW/MAF**

**RICHARD CORCORAN, et al.,**

       *Defendants*.

_____/

---

## DEFENDANTS' MOTION TO
## DISMISS PLAINTIFFS' AMENDED COMPLAINT
## <u>AND INCORPORATED MEMORANDUM OF LAW</u>

1

## TABLE OF CONTENTS

**Introduction** ....................................................................................................3

**HB 233** ............................................................................................................5

**Argument** ........................................................................................................8

I. No Case or Controversy Exists For All Three Counts.......................................8

A. All Plaintiffs Lack Standing...........................................................................8

B. Organizational Plaintiffs Lack Standing. ....................................................16

C. Plaintiffs' Claims are Not Ripe. ...................................................................18

II. Plaintiffs Fail to State a Claim........................................................................21

A. Pleading Standard for a Facial Challenge. ..................................................21

B. Plaintiffs Fail to State a Freedom of Association Claim (Count II)............22

C. Plaintiffs Fail to State a Compelled Speech Claim (Count III)...................25

1. HB 233 Does Not Regulate Speech. ..........................................................25

2. HB 233 Does Not Compel Speech..............................................................27

D. Plaintiffs Fail to State a Viewpoint Discrimination Claim (Count I). .........28

E. Plaintiffs Do Not Challenge Sections 4 or 5 of HB 233. ............................31

**Conclusion**......................................................................................................31

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss Plaintiffs' Amended Complaint. ECF No. 35.

## INTRODUCTION

Plaintiffs invite this Court to strike down a statute as facially unconstitutional despite lacking standing and presenting claims that are not ripe for adjudication. Precedent dictates this Court should decline their offer.

On the merits, Plaintiffs' viewpoint and compelled speech claims are based on an unsupported reading of the provisions prohibiting colleges and universities from "shielding" students, faculty, or staff from ideas and opinions they may find uncomfortable, unwelcome, disagreeable, or offensive (the "Anti-Shielding Provisions"). When the text of House Bill (HB) 233[1] is considered, which this Court must, it reveals that the Anti-Shielding Provisions do not regulate speech, much less compel speech or promote a viewpoint. Quite the opposite. HB 233 merely codifies the preeminent principle underlying the First Amendment: "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Ensuring

---

[1] HB 233, was approved by the Governor on June 22, 2021, and designated as Chapter 2021-159, Laws of Florida. In light of Plaintiffs' challenge to the enacted legislation and for ease of reference, HB 233 is cited generally throughout this Motion. However, where citation to a specific statutory revision from HB 233 is necessary, the 2021 statute is cited for clarity.

that the First Amendment is not violated does not itself result in a violation of the First Amendment.

Plaintiffs' alleged violation of their free associational rights premised upon a parade of horribles arising from the provisions requiring colleges and universities to conduct surveys to measure intellectual freedom and viewpoint diversity on their campuses (the "Survey Provisions") are equally unshackled from the text of HB 233 and fare no better.  Without knowing the content of any survey, how it will be administered, or how the results may be utilized in the future, Plaintiffs foretell future injuries resulting from a hypothetical chain of contingencies that find no footing in the language of the statute they are challenging. Of course, this is not how the constitutionality of a statute is determined. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 584 (1998) (observing the Court's reticence to "invalidate legislation on the basis of its hypothetical application to situations not before the Court.") (quotations omitted); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 396 (1969) ("[W]e will not now pass upon the constitutionality of these regulations by envisioning the most extreme applications conceivable . . . but will deal with those problems if and when they arise.") (internal citation omitted).

Plaintiffs' allegations concerning the future impact of HB 233 fail to satisfy the irreducible minimum to afford standing, fail to demonstrate their claims are ripe for consideration, and fail to state any First Amendment claim.

### HB 233

In determining the purpose of HB 233, this Court's inquiry begins with a heedful inspection of the text of HB 233 itself. *See Church of Scientology v. City of Clearwater*, 2 F.3d 1514, 1527 (11th Cir. 1993) ("Inquiry into legislative purpose begins with interpreting the law itself."); *Adler v. Duval Cnty. Sch. Bd.*, 206 F.3d 1070, 1084 (11th Cir.), *cert. granted, judgment vacated*, 531 U.S. 801 (2000), *and opinion reinstated*, 250 F.3d 1330 (11th Cir. 2001) ("That requires close attention be paid to the plain language of the policy."). Despite Plaintiffs' urging to the contrary, any attempt to divine legislative purpose from comments of a handful of individual legislators or public officials is nothing more than guesswork and is to be avoided. *See United States v. O'Brien*, 391 U.S. 367, 383–84 (1968) ("Inquiries into congressional motives or purposes are a hazardous matter. . . . It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."); *Aldridge v. Williams*, 44 U.S. 9, 24 (1845) (instructing that the Court cannot be influenced in any degree by the motives of individual members of Congress, but should instead determine the will and intention of the Legislature from "the law as it passed" and "the language there used.").

The purpose of HB 233, as demonstrated by its plain language, is to *protect* free speech and expressive activities that would be afforded First Amendment protections at public postsecondary institutions ("institutions").  HB 233 requires the State Board of Education[2] and the Board of Governors[3] (collectively, the "Boards") to select or create an "objective, nonpartisan, and statistically valid" survey in order to conduct an annual assessment of the "intellectual freedom and viewpoint diversity" throughout their college and university campuses.[4] § 1001.03(19)(b) & 1001.706(13)(b), Fla. Stat. In fact, these surveys will be administered by the respective state colleges and universities which these Boards oversee. *Id*.  The State Board of Education has been granted rulemaking authority to adopt rules to implement this requirement. § 1001.03(19)(b), Fla. Stat.

Equally as important is what HB 233 does *not* provide. HB 233 does not mandate the disclosure of viewpoints, political beliefs, or memberships in associations. HB 233 does not mandate that every individual or any particular class

---

[2] The State Board of Education is the chief implementing and coordinating body of public education in Florida—except for the State University System—including the Florida College System.  § 1001.02(1) Fla. Stat.; *see generally* § 1001.02(3)-(6), Fla. Stat.

[3] The Board of Governors is the constitutional governing body responsible for operating, regulating, controlling and managing the State University System.  Art. IX, § 7, Fla. Const.

[4] "Intellectual freedom and viewpoint diversity" means the exposure of students, faculty, and staff to, and the encouragement of their exploration of, a variety of ideological and political perspectives.  §§ 1001.03(19)(a)(1) & 1001.706(13)(a)(1), Fla. Stat.

of individuals on campus participate in the survey. Moreover, nowhere does HB 233 require completion of the survey in a non-anonymous manner.

As for the Anti-Shielding Provisions, HB 233 prohibits the Boards and institutions[5] from "shielding"[6] students, faculty, or staff at institutions from "ideas and opinions" that qualify as either "free speech protected under the First Amendment," sections 1001.03(19)(c) and 1001.706(13)(c), Florida Statutes, or "expressive activities"[7] protected under the First Amendment. §1004.097(3)(a), Fla. Stat. As a threshold matter, the Anti-Shielding Provisions do not *regulate* speech. They aim to prevent government actors from suppressing speech that is protected by the First Amendment, in effect *deregulating* protected expression. HB 233 does not compel Plaintiffs to adopt speech of any type, nor does it require that faculty members alter their syllabi or curriculum. HB 233 does not require a faculty member

---

[5] Unless otherwise noted, the term "institutions" refers to institutions in both the Florida College System and the State University System.

[6] "Shield" means to limit students', faculty members', or staff members' access to, or observation of, ideas and opinions that they may find uncomfortable, unwelcome, disagreeable, or offensive. §§ 1001.03(19)(a)(2), 1001.706(13)(a)(2), & 1004.097(2)(f), Fla. Stat.

[7] "Expressive activities protected under the First Amendment . . . include, but are not limited to, any lawful oral or written communication of ideas, including all forms of peaceful assembly, protests, and speeches; distributing literature; carrying signs; circulating petitions; faculty research, lectures, writings, and commentary, whether published or unpublished; and the recording and publication, including the internet publication, of video or audio recorded in outdoor areas of campus." § 1004.097(3)(a), Fla. Stat.

to "teach and adopt topics and viewpoints they would not otherwise teach or adopt" or provide a cause of action if the professor fails to do so.  ECF No. 35 ¶ 9.

To ensure expressive activities otherwise protected by the First Amendment are not suppressed on campuses, HB 233 creates a cause of action against institutions by any person injured by a violation of his or her expressive rights where those rights are protected under the First Amendment. Simply stated, HB 233 codifies existing First Amendment protections for the expressive rights of individuals in the post-secondary educational forum. Far from creating a cause of action against professors for their decision to not include content in their syllabi or courses, HB 233 expressly provides that where otherwise protected under the First Amendment, "faculty research, lectures, writings and commentary, whether published or unpublished" constitutes "expressive activities" and affords faculty the right to bring a cause of action against the institution where such expressive activities are violated. § 1004.097(4)(a), Fla. Stat.

Finally, HB 233 does not mandate present or future funding decisions from the Legislature or any other governmental entity. These speculative consequences cannot support the facial invalidation of HB 233, in whole or in part.

<u>**ARGUMENT**</u>

**I. NO CASE OR CONTROVERSY EXISTS FOR ALL THREE COUNTS.**

**A. All Plaintiffs Lack Standing.**

The "standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) (quotation omitted). To have standing, a "plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000) (quoting *Friends of the Earth, Inc.v. Laidlaw Envtl. Services, Inc*., 528 U.S. 167 (2000)). These factors are the "irreducible minimum" of the constitutional standing requirements. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Factual allegations necessary to support standing are not mere pleading requirements but are an indispensable part of Plaintiffs' case. *Id.* at 561.

Here, Plaintiffs' alleged injuries are based on a chain of conjured contingencies and are far from the type of "certainly impending" injury that affords them standing to enter federal court and facially challenge the constitutionality of a statute.

With respect to the alleged injuries stemming from the Survey Provisions,[8] Plaintiffs pled no actual knowledge of the content of any survey, the manner in which it will be administered, nor whether it will be used in any future funding decisions— nor could they since the survey has yet to be developed.  Likewise, their contention that because amendments to HB 233 requiring the survey to be anonymous were not incorporated, a contrary legislative intent against anonymity should be inferred, is completely inappropriate.  *See Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 382, n. 11 (1969) ("In any event, unsuccessful attempts at legislation are not the best of guides to legislative intent."). Instead of particularized and imminent injuries, Plaintiffs offer mere assumptions about the content of the survey, the manner in which it could be administered, and how it may be used in the future—none of which are fairly traceable to the plain language of HB 233. Thus, their claimed injuries stemming from these assumptions are speculative and do not support an injury in fact for purposes of Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013) (noting that respondents have "no actual knowledge" of the

---

[8] As for the Survey Provisions, Plaintiffs allege: "HB 233 requires each institution . . . to conduct a yearly survey to identify the political and ideological views within their communities," ECF No. 35 ¶¶ 2, 6; the survey may not be anonymous or voluntary, *id.* ¶¶ 68–71; the survey "will stifle and suppress [professors'] First Amendment freedoms of speech and association . . . based on their viewpoints," *id.* ¶¶ 27, 29; "if students voice these complaints . . . the state of Florida could weaponize the results to cut funding," *id.* ¶¶ 32, 35, 38; and "[t]he Survey Provisions neither explain nor put any limitations on how the Governor, Florida Legislature, or Boards might use the results of the survey," *id.* ¶ 78.

Government's targeting practices under a specific statute, but instead "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired" under the statute; and holding that "respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending"); *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm").

With respect to the injuries associated with the Anti-Shielding Provisions,[9] Plaintiffs again fail to offer sufficient facts to demonstrate that an injury is certainly impending as a result of HB 233. This, in large part, is because the Anti-Shielding Provisions do not require Plaintiffs to espouse views at all, including views they do not hold, and consequently do not infringe on their ability to control their syllabi and curriculum. It does just the opposite: it prevents government actors from suppressing First Amendment speech, including the Plaintiffs' own protected expressions that

---

[9] As for the Anti-Shielding Provisions, Plaintiffs allege: "HB 233 incentivizes Florida's public institutions to protect 'uncomfortable, unwelcome, disagreeable, or offensive' speech by permitting students to file suit," "including complaints and lawsuits to enforce the Anti-Shielding Provisions," ECF No. 35 ¶¶ 86–87, 91; and the Anti-Shielding Provisions "will compel Faculty Plaintiffs to teach and espouse views they do not hold," "alter their syllabi in order to cover topics they would have otherwise excluded," "discuss topics which they otherwise would not discuss, assign reading they otherwise would not assign, and invite guest speakers they otherwise would not invite," *id.* ¶¶ 97–98, 154–55.

others may find uncomfortable, unwelcome, disagreeable, or offensive. Plaintiffs cannot demonstrate standing based upon a speculative theory that finds no support in the statute they are challenging. *Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 393 (1988) (requiring plaintiffs to allege "an actual and well-founded fear that the law will be enforced against them").

Defendants fully support Plaintiffs' academic freedoms, including the ability to establish their own syllabi and curricula.[10]  *Keyishian v. Bd. of Regents of Univ. of State of N. Y*., 385 U.S. 589, 603, (1967) (observing academic freedom is "a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom."). HB 233 does not mandate that the Defendants withdraw that support.  Quite simply, HB 233 does not dictate the subject matter of

---

[10] Even if HB 233 dictated curricula at the post-secondary level, Plaintiffs' claims would still come short of stating a cognizable First Amendment injury in fact. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995) ("When the University determines the content of the education it provides, it is the University speaking, and [the Court has] permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message."); *Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 491 (3d Cir 1998) ("[W]e conclude that a public university professor does not have a First Amendment right to decide what will be taught in the classroom."); *Bishop v. Aronov*, 926 F.2d 1066 (11th Cir. 1991) ("[w]e do not find support to conclude that academic freedom is an independent First Amendment right"; department head's memorandum instructing professor to refrain from interjecting religious beliefs or preferences during instructional time periods and from conducting optional classes with students on university property to discuss Christian perspective on academic topics did not violate professor's free speech rights).

any syllabi or curriculum, nor cast a pall over any classroom. Instead HB 233 fosters the free exchange of ideas that is the hallmark of First Amendment protection.

Plaintiffs also challenge HB 233's provision permitting students to record video or audio of class lectures (the "Recording Provision"). § 1004.097(3)(g), Fla. Stat. But the alleged injuries attributable to the Recording Provision[11] are premised not only upon Plaintiffs' inaccurate interpretation of HB 233 and assumptions concerning the Anti-Shielding Provisions but also on the fruition of a series of events, including the unlawful filming of a lecture and the improper utilization of the filming against a professor. Plaintiffs' allegations ignore the aspects of the Recording Provision which only permit a student to record class lectures for the students own educational use or in connection with a complaint as evidence. *See* § 1004.097(3)(g), Fla. Stat. Importantly, HB 233 further provides protections for the lecturer against any person who publishes a recorded lecture without the lecturer's consent. *See* § 1004.097(4)(b), Fla. Stat. These provisions run in contrast to the

---

[11] As for the Recording Provision, Plaintiffs allege: "the Recording Provision provides students the means to harass faculty members who express views with which the students disagree," ECF No. 35 ¶ 89; the "Recording Provision[] will compel Faculty Plaintiffs to teach and espouse views they do not hold, and otherwise censor and chill their speech," *id.* ¶¶ 9, 97; the recordings will be "taken out of context by their accusers," *id.* ¶ 100; and "because of the ever-present threat of being recorded (surreptitiously or otherwise) during their lectures, the Faculty Plaintiffs will avoid expressing viewpoints that they know may cause controversy or form the basis for student allegations of bias," *id.* ¶ 120.

faulty narrative advanced through the Amended Complaint that HB 233 is intended to bully and harass faculty.

As to Plaintiffs' allegations concerning future budget cuts, *see generally* ECF No. 35 ¶¶ 22, 119, & 133, those too are speculative and require the action of independent third parties, namely the Legislature and the Governor. HB 233 does not address funding or budgetary measures, nor does it direct any particular action based upon the outcome of a survey. In effect, Plaintiffs' speculative injuries do not arise from HB 233 but from some hypothetical future legislative or executive action that may never be taken.

The Amended Complaint does not demonstrate that Plaintiffs will suffer an injury-in-fact, which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (holding that political protestors failed to establish an injury in fact where their allegations concerning future First Amendment activities were not imminent or concrete); *31 Foster Children v. Bush*, 329 F.3d 1255, 1266–67 (11th Cir. 2003) (observing that a future injury must "proceed with a high degree of immediacy" for standing to exist); *Bowen v. First Family Fin. Servs*., 233 F.3d 1331, 1340 (11th Cir. 2000) (noting a want of standing where there is a "perhaps or maybe chance" of an injury occurring). Specifically, the Amended Complaint contains no allegations that would establish an actual or imminent threat to the rights of Plaintiffs by HB 233.

Plaintiffs' allegations that HB 233 will "chill" their speech are insufficient to establish standing because such concerns are not objectively reasonable. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (internal quotations omitted); *accord Wilson v. State Bar of Ga*., 132 F.3d 1422, 1428 (11th Cir. 1998) ("A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable."). Plaintiffs' hypothetical chain of contingencies that serve as the basis for their allegations that their speech will be chilled is speculative. *Fla. Fam. Pol'y Council v. Freeman*, 561 F.3d 1246, 1255 (11th Cir. 2009) ("The fear is not objectively reasonable because it depends on speculation and conjecture that instead of disqualifying himself where the canons require him to do so, the judge will refuse and face discipline."). To be clear, these fears find no home in HB 233, nor have Plaintiffs offered any realistic danger that HB 233 will be used against them in violation of their First Amendment rights. *See Doe v. Pryor*, 344 F.3d 1282, 1287 (11th Cir. 2003) ("The plaintiffs have alleged nothing more than a subjective fear that [they] may be prosecuted for engaging in expressive activity, which we have held is not enough.") (internal quotations omitted); *Jacobs v. Florida Bar*, 50 F.3d

901, 904 (11th Cir. 1995) ("[A] plaintiff has standing if he demonstrate[s] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.").

For similar reasons, any alleged injury cannot be traced back to HB 233 because HB 233 does not mandate what Plaintiffs allege nor support their alleged chilled-speech injury. *Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 508 (5th Cir. 2019) ("Freedom Path's claimed chilled-speech injury is not fairly traceable to the text of Revenue Ruling 2004-6, meaning it does not have standing to bring this facial challenge.").

**B. Organizational Plaintiffs Lack Standing.**

As with the Individual Plaintiffs, the Organizational Plaintiffs lack standing. "The first requirement of associational standing is that at least one member meets the three requirements of individual standing." *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1344 (11th Cir. 2005). As advanced in section I. A., because the Individual Plaintiffs do not have standing to sue in their own right, this Court does not need to turn to the second and third requirements of associational standing. Nevertheless, if the Individual Plaintiffs do have standing to sue in their own right, the second and third requirements of associational standing are: "whether the interests at stake are germane to the plaintiff organizations' purposes, and whether

the claim or relief requested requires the participation of their individual members in the lawsuit." *Id.* at 1345.

United Faculty of Florida ("UFF") alleges HB 233 chills the speech of its bargaining unit members and constituents, but only quotes a single Defendant's unsourced comment, never identifying any language in HB 233 that would impose the imagined horrors. ECF No. 35, ¶ 19. Further, UFF alleges, "HB 233 . . . harms UFF's mission of ensuring that its bargaining unit members and constituents are treated fairly and equitably, promoting fairness and equity within Florida's institutions of higher education, combatting political and viewpoint discrimination, safeguarding academic freedom, and in promoting academic excellence and free speech on campus." ECF No. 35 ¶ 20. UFF's allegations of its own harm—like that of the Faculty Plaintiffs—are vague, conclusory, not traceable to HB 233, and insufficient to confer standing.

March for Our Lives Action Fund ("MFOL") similarly lacks associational standing. Nowhere in the Amended Complaint does MFOL specifically plead that at least one member meets the three requirements of individual standing. *Sierra Club*, 430 F.3d at 1344. Rather, the Amended Complaint broadly alleges that HB 233 "target[s] the viewpoints on which MFOL advocates," which "chills the speech and freedom of association of students who have joined its movement." ECF No. 35 ¶ 123. The second and third requirements of associational standing for MFOL also

fail. The interests at stake are not germane to MFOL's purposes. "MFOL's mission is to harness the power of young people to fight for sensible gun violence prevention policies that save lives." *Id.* ¶ 21. HB 233 does not prevent students who have joined MFOL from expressive activities protected under the First Amendment. Accordingly, MFOL cannot establish the requirements for associational standing.

Finally, Plaintiffs' "contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Here, Plaintiffs' alleged injury-in-fact consists of fears that find no basis in HB 233, but are instead rooted entirely in isolated, alleged comments of non-party public officials and isolated, alleged comments by Defendant Corcoran unrelated to the challenged provisions. *See* ECF 35 ¶ 6, 57–59. Therefore, any cost they may have incurred in response to these off-hand remarks is insufficient to confer standing. *Clapper*, 568 U.S. at 416. ("In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

## C. Plaintiffs' Claims are Not Ripe.

"The ripeness doctrine prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Wilderness Soc'y v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996) (quoting *Abbott Lab. v. Gardner*,

387 U.S. 136, 148–49 (1967)). To determine whether a claim is ripe, this Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir. 2000) (quoting *Wilderness,* 83 F.3d at 390). Stated otherwise, this Court must resolve "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete to permit effective decision-making by the court." *Id. (*quoting *Georgia Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1298–99 (11th Cir.1999))

Plaintiffs' challenges to HB 233 are not fit for adjudication. Claims that require "speculation about contingent future events" and "venture beyond purely legal issues" are "less likely to be considered fit for adjudication." *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) (internal quotation omitted). Additionally, courts have concerns regarding the fitness of a case for adjudication where the court is asked to "interfere[] with an agency's decisionmaking process before it has the opportunity to finalize its policies." *Id. Pittman* is instructive. There, the plaintiffs "jumped the gun in bringing their claims," *id.* at 1279, because they "rush[ed] into federal court to seek an injunction," did not "allow[] the Bar to formulate a final policy," but instead asked the courts "to speculate, without any evidentiary basis" and "prematurely and perhaps unnecessarily reach[] constitutional issues." *Id.* at 1280.

Such is the case here. HB 233 directs the Boards to select or create a survey and affords the State Board of Education the ability to promulgate rules. Plaintiffs have not made, and cannot make, any allegations concerning the Boards' selection or creation of a survey, the promulgation of any rules, or the various institutions' administration of the survey. Instead, Plaintiffs proceed on rank speculation without any concrete allegations concerning the Survey Provisions or the implementation of the Anti-Shielding Provisions. No Plaintiff alleges any facts that suggest they are presently or imminently being mandated to divulge their personal political beliefs as part of a survey or that they are imminently being mandated to espouse views with which they disagree.   Simply put, the speculation over how HB 233 may be implemented renders it unfit for judicial decision at this juncture. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotations omitted).

The lack of hardship to the parties also counsels against a finding of ripeness. *See Pittman*, 267 F.3d at 1280 ("[I]f a party is to suffer an 'immediate and direct impact' from a challenged policy, a case is more likely to be considered ripe." (quoting *Bankers Life & Cas. Co. v. Callaway*, 530 F.2d 625, 631 (5th Cir. 1976)). Here, Plaintiffs base their allegations of injury on a highly speculative chain of circumstances that do not flow from the language of the statute they facially

challenge.  Plaintiffs provide no well-pled allegations of immediate and direct injury, nor any allegations that HB 233 has been implemented unconstitutionally, or that they will be injured prior to its implementation.

## II. PLAINTIFFS FAIL TO STATE A CLAIM.

### A. Pleading Standard for a Facial Challenge.

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotations and citations omitted).

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiffs have failed to carry this burden in their facial challenge to HB 233.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of

circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court has recognized "a second type of facial challenge in the First Amendment context under which a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769–71 (1982)); *accord United States v. Williams*, 553 U.S. 285, 292 (2008) ("[A] statute is facially invalid if it prohibits a substantial amount of protected speech."). "[B]efore applying the 'strong medicine' of overbreadth invalidation," the Supreme Court has "insisted that a law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003) (citations omitted). As the party alleging overbreadth, Plaintiffs "bear[] the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Id.* at 122 (quotations omitted).

As explained below, under either the *Salerno* standard or the "substantial number" standard, Plaintiffs fail to carry their burden.

### B. Plaintiffs Fail to State a Freedom of Association Claim (Count II).

In Count II, Plaintiffs claim that the Survey Provision violates their First Amendment right because it mandates they disclose their associations, ECF No. 35 ¶¶ 130, 132, 138, and their political views, *id.* ¶¶ 133, 137–38, in a non-anonymous fashion so that the government may "punish" them at some date in the future for their beliefs in the form of harassment, political retribution, and budget cuts, *id.* ¶¶ 133, 137.  This claim should be dismissed.

For the reasons articulated in section II. C., Plaintiffs' allegations that their freedom to associate will be abridged by the yet-to-be implemented Survey Provision do not "raise a right to relief above the speculative level" and amount to nothing more than conclusions and do not permit this Court to infer that Plaintiffs are entitled to relief. *See Twombly*, 550 U.S. at 555–56.

Plaintiffs have not made allegations sufficient to sustain a facial challenge, under either the *Salerno* or "substantial number" standard. They have not alleged that under no set of circumstances would the Survey Provision be valid—nor could they. *See e.g. C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 190 (3d Cir. 2005) (holding that anonymous surveys did not violate parents' or students' privacy or speech rights); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1209–10 (9th Cir. 2005), opinion amended on denial of reh'g sub nom. *Fields v. Palmdale Sch. Dist.* (PSD), 447 F.3d 1187 (9th Cir. 2006) (holding that school district's inclusion of questions about sexual topics, including questions as to how frequently children

thought about sex, in survey given to elementary school children in effort to identify psychological barriers to learning, was rationally related to school district's legitimate state interest in effective education and mental welfare of its students, and thus did not violate parents' substantive due process or privacy rights).

Nor have they sufficiently alleged facts—when combined with the text of HB 233—to demonstrate that substantial overbreadth exists. *See Hicks*, 539 U.S. at 122 ("The overbreadth claimant bears the burden of demonstrating from the text of the law and from actual fact, that substantial overbreadth exists.") (cleaned up). If, for example, the Boards publish a voluntary or anonymous survey, plaintiff's unsubstantiated claims of HB 233 targeting individuals, organizations, or institutional departments are eviscerated.  Plaintiffs allege no facts demonstrating the survey certainly will be conducted in a contrary manner or that they are being compelled to complete the survey by name.

Unquestionably, the government has a legitimate interest in gauging the intellectual freedom and viewpoint diversity at public universities and institutions. *See Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2046 (2021) ("Schools have a strong interest in ensuring that future generations understand the workings in practice of the well-known aphorism: 'I disapprove of what you say, but I will defend to the death your right to say it.'").  After all, the Supreme Court of the United States has acknowledged that "America's public

schools are the nurseries of democracy" and that "[o]ur representative democracy only works if we protect the 'marketplace of ideas.'" *Id.*; *accord Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 603 (1967) ("The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, (rather) than through any kind of authoritative selection.") (internal quotations omitted) (alteration in original). Certainly nothing in the text of the First Amendment or its precedents forbids government from simply assessing intellectual freedom and viewpoint diversity in public universities and colleges.

Against the Survey Provision's plainly legitimate application, it cannot be said that the law's application to protected speech—if any—is substantial to warrant applying the strong medicine of overbreadth invalidation. *See Hicks*, 539 U.S. at 119–20.

### C. Plaintiffs Fail to State a Compelled Speech Claim (Count III).

#### 1.    HB 233 Does Not Regulate Speech.

Plaintiffs' compelled speech argument is rooted entirely in the Anti-Shielding Provisions. ECF No. 35 ¶ 149. The Anti-Shielding Provisions do not regulate but deregulate speech. *Cf. Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not *regulate* speech based on its substantive content or the message it conveys.") (emphasis added); *See Bd. of*

25

*Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866–67 (1982) ("[T]he State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. In keeping with this principle, we have held that in a variety of contexts the Constitution protects the right to receive information and ideas.") (internal quotations omitted). In stark contrast to regulating speech or contracting the spectrum of available knowledge, HB 233 prohibits government actors from suppressing speech that is protected by the First Amendment, wholly in tune with the First Amendment's counter-majoritarian protections.

HB 233 does not compel any one—including Plaintiffs—to utter or publish a single word.  But it does prevent the government from taking action to silence First Amendment-protected expressions that others may find uncomfortable, unwelcome, disagreeable, or offensive. The State may certainly choose to protect the freedom of expression through legislative efforts aligned with constitutional rights, understanding that leaders and issues may change but freedom of expression is perpetually essential and worthy of codification. "No person is always in the majority, and our Constitution places out of reach of the tyranny of the majority the protections of the First Amendment. The promise of free speech is that even when one holds an unpopular point of view, the state cannot stifle it." *Wollschlaeger v. Governor, Fla*., 848 F.3d 1293, 1327 (11th Cir. 2017).  The law simply directs

governmental actors to protect and not violate the already-existing rights of those who wish to express a viewpoint with which others may disagree. *Women's Emergency Network v. Bush*, 323 F.3d 937, 947 (11th Cir. 2003) (finding that the "Choose Life statute does not in any way restrict or prohibit Appellants' speech . . . . The First Amendment protects the right to speak; it does not give Appellants the right to stop others with opposing viewpoints from speaking.").

### 2.    HB 233 Does Not Compel Speech.

Moreover, even if HB 233 did regulate speech—which it does not—it certainly does not compel speech. HB 233 does not compel Plaintiffs to adopt speech, alter their syllabi, "personally speak the government's message," or "host or accommodate another speaker's message." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 63 (2006). Nor does it provide a cause of action if a professor does not "teach and adopt topics and viewpoints they would not otherwise teach or adopt." ECF No. 35 ¶ 9.

Rather, HB 233 does the opposite: instead of forcing a plaintiff to speak, it prevents "shielding" students, faculty, or staff from free speech protected under the First Amendment. Stated differently, HB 233 does not mandate any speech—nothing in the text requires any student, professor, or staff to make any expression at all.   The Boards and their institutions are simply prohibited from regulating or silencing an individual's First Amendment protected expressions for the comfort and

convenience of others. If it were otherwise, the tyranny of the majority would control, either silencing speech that is unpopular or effectively silencing it through relegation to a lesser forum. Plaintiffs' suggestion that "[t]o avoid violating HB 233, the professor would have no choice but to include ['uncomfortable, unwelcome, disagreeable, or offensive'] writings in [a] syllabus and discuss them in class," "to alter their syllabi in order to cover topics they would have otherwise excluded," or to "discuss topics which they otherwise would not discuss, assign reading they otherwise would not assign, and invite guest speakers they otherwise would not invite," finds no basis in HB 233 and amounts to mere conjecture. *Id.* ¶¶ 152, 154–55, 161.

Plaintiffs make no factual allegations suggesting that HB 233's Anti-Shielding Provisions are being implemented in an unconstitutional manner, and the overarching speculations they do make are ephemeral and untethered to the text of HB 233. This Count should be dismissed. *St. John v. United States*, 54 F. Supp. 2d 1322, 1323 (S.D. Fla. 1999) (noting that a "[c]ourt is not required to abrogate the basic pleading essentials or conjure up unplead allegations" to save a complaint).

### D. Plaintiffs Fail to State a Viewpoint Discrimination Claim (Count I).

As explained above, HB 233 does not regulate speech, much less impose viewpoint discrimination. *See supra* Section II. C. 1. Even if HB 233 does regulate speech—which it does not—it does so in a content-neutral manner. Unlike content-

neutral regulations, "[w]hen the government engages in viewpoint discrimination, it *limits* speech that would otherwise be allowed, thereby violating the speaker's First Amendment rights." *Pine v. City of W. Palm Beach, Fla.*, No. 13-80577-CIV, 2013 WL 5817651, at *6 (S.D. Fla. Oct. 29, 2013), *aff'd sub nom. Pine v. City of W. Palm Beach, FL*, 762 F.3d 1262 (11th Cir. 2014) (emphasis added) (citing *Rosenberger*, 515 U.S. at 830). HB 233 does exactly the opposite; it codifies what the Supreme Court has reiterated time and time again: speech may not be suppressed simply because it expresses ideas of any viewpoint that are offensive, disagreeable, invites disputes, or creates dissatisfaction. *See Mahanoy Area Sch. Dist.*, 141 S. Ct. at 2049 (Alito, J., concurring) ("[P]ublic school students, like all other Americans, have the right to express 'unpopular' ideas on public issues, even when those ideas are expressed in language that some find 'inappropriate' or 'hurtful'; public schools have the duty to teach students that freedom of speech, including unpopular speech, is essential to our form of self-government.") (internal quotations omitted); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). Ensuring that the First Amendment is not violated by restricting the ability of the government to censor viewpoints does not amount to viewpoint discrimination

itself.[12] Because nothing in the text of HB 233 regulates speech, much less discriminates based upon viewpoint, it is not violative of the First Amendment.

Plaintiffs' attempt to inject the comments of legislators and public officials as an interpretive tool to conclude HB 233 is discriminatory against certain viewpoints is improper where the statute is facially-neutral and valid. *See United States v. O'Brien*, 391 U.S. 367, 383-84 (1968) (declining to void a statute prohibiting the burning of draft cards that was "under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it" and observing "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork"). The Eleventh Circuit has held "many times" that "a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose." *In re Hubbard*, 803 F.3d 1298, 1312–13 (11th Cir. 2015) (citing *Artistic Entm't, Inc. v. City of Warner Robins*, 223 F.3d 1306, 1309 (11th Cir. 2000); *Int'l Food & Beverage Sys.*

---

[12] Plaintiffs' reliance on *Matal v. Tam*, 137 S.Ct. 1744, 1763 (2017) does not alter this conclusion. In *Matal*, a government regulation prohibited the registration of trademarks that are offensive to a substantial percentage of members of any group– having the effect of prohibiting the public expression of ideas "merely because the ideas are themselves offensive to some of their hearers." *Id*. at 1763. In contrast, HB 233 merely prohibits the suppression of expressive activities otherwise protected by the First Amendment. No expressive activity is favored, and all are placed on equal footing.

*v. City of Fort Lauderdale*, 794 F.2d 1520, 1525 (11th Cir. 1986)).  Plaintiffs' allegations of viewpoint discrimination hinge on the comments of legislators and public officials—not the plain language of HB 233.  Accordingly, such allegations in Count I are insufficient to state a claim for viewpoint discriminations.

### E. Plaintiffs Do Not Challenge Sections 4 or 5 of HB 233.

Plaintiffs request this Court to facially declare that HB 233—in its entirety—violates the First and Fourteenth Amendments. Plaintiffs advance no argument concerning the constitutionality of sections 4 or 5 of HB 233[13]; therefore, this Court should dismiss Plaintiffs' claims as to those sections.

### CONCLUSION

For the reasons set forth above, Defendants request this Court to dismiss the Amendment Complaint, ECF No. 35, because the Plaintiffs lack standing, the claims are not ripe, and the allegations fail to state a claim for violation of the First Amendment.

---

[13] Sections 4 and 5 of HB 233 come on the heels of a Florida State University student senate body president's removal from office in violation of the First Amendment because he made statements that were unpopular. *Denton v. Thrasher*, Case No. 4:20-cv-425-AW-MAF, ECF No. 55 (N.D. Fla. 2021).

Respectfully submitted on this 7th day of September 2021.

/s/ *George T. Levesque*
George T. Levesque
Florida Bar No. 555541
James Timothy Moore, Jr.
Florida Bar No. 70023
Patrick M. Hagen
Florida Bar No. 1010241
GrayRobinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
Facsimile: 850-577-3311
George.Levesque@gray-robinson.com
Tim.Moore@gray-robinson.com
Patrick.Hagen@gray-robinson.com
*Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

The undersigned certifies this Motion to Dismiss and Incorporated Memorandum of Law contains 7,485 words.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 7, 2021, the foregoing was filed with

the Court's CM/ECF system which will serve a copy via email on the following co-

counsel for Plaintiffs:

**CHRISTINA A FORD**
ELIAS LAW GROUP - WASHINGTON DC
10 G STREET NE
SUITE 600
WASHINGTON, DC 20002
Email: cford@elias.law

**JOSEPH NICHOLAS POSIMATO**
ELIAS LAW GROUP - WASHINGTON DC
10 G STREET NE
SUITE 600
WASHINGTON, DC 20002
Email: jposimato@elias.law

**JYOTI JASRASARIA**
ELIAS LAW GROUP - WASHINGTON DC
10 G STREET NE
SUITE 600
WASHINGTON, DC 20002
Email: jjasrasaria@elias.law

**MARC E ELIAS**
ELIAS LAW GROUP - WASHINGTON DC
10 G STREET NE
SUITE 600
WASHINGTON, DC 20002
Email: melias@elias.law

**SPENCER WILLIAM KLEIN**
PERKINS COIE LLP - WASHINGTON DC
700 13TH STREET NW

SUITE 800
WASHINGTON, DC 20005
Email: spencerklein@perkinscoie.com

**THOMAS ALAN ZEHNDER**
KING BLACKWELL ZEHNDER & WERMUTH PA –
ORLANDO FL
25 E PINE STREET
ORLANDO, FL 32801
Email: tzehnder@kbzwlaw.com

**FREDERICK STANTON WERMUTH**
KING BLACKWELL ZEHNDER ETC PA - ORLANDO FL
25 E PINE ST
ORLANDO, FL 32801
Email: fwermuth@kbzwlaw.com

**ALEXI MACHEK VELEZ**
ELIAS LAW GROUP - WASHINGTON DC
10 G STREET NE
SUITE 600
WASHINGTON, DC 20002
Email: avelez@elias.law

**ELISABETH C FROST**
ELIAS LAW GROUP - WASHINGTON DC
10 G STREET NE
SUITE 600
WASHINGTON, DC 20002
Email: efrost@elias.law

/s/ *George T. Levesque*
George T. Levesque
Florida Bar No. 555541
GrayRobinson, P.A.