UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM A. LINK, et al.,

    *Plaintiffs*,

     v.

RICHARD CORCORAN, in his official
capacity as the Florida Commissioner of
Education, et al.,

    *Defendants*.

Case No. 4:21-cv-00271-MW-MAF

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT IN
RESPONSE TO THE COURT'S JANUARY 24, 2022 ORDER**

# **TABLE OF CONTENTS**

INTRODUCTION ..............................................................................1

BACKGROUND ...............................................................................3

ARGUMENT ....................................................................................6

   A.  In *Jackson*, the defendants argued they had sovereign immunity, an argument Defendants do not make in their motion to dismiss. ........................................6

   B.  The principles enunciated and applied in *Jackson* confirm that Plaintiffs should be permitted to proceed with their claims...........................................8

CONCLUSION ...............................................................................16

CERTIFICATE OF SERVICE ......................................................18

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Cnty. of Hawaii v. Ala Loop Homeowners*,
   235 P.3d 1103 (Haw. 2010) ................................................................14

*Cressman v. Thompson*,
   719 F.3d 1139 (10th Cir. 2013) ...........................................................7

*Doe v. Holcomb*,
   883 F.3d 971 (7th Cir. 2018) ................................................................7

*Eternal Word Television Network, Inc. v. Sebelius*,
   935 F. Supp. 2d 1196 (N.D. Ala. 2013)...............................................7

*Heart of Atlanta Motel, Inc. v. United States*,
   231 F. Supp. 393 (N.D. Ga.), *aff'd*, 379 U.S. 241 (1964) .................15

*Jacobson v. Fla. Sec'y of State*,
   974 F.3d 1236, 1256 (11th Cir. 2020) .................................................7

*Katzenbach v. McClung*,
   379 U.S. 294 (1964)............................................................................15

*Lewis v. Governor of Ala.*,
   944 F.3d 1287 (11th Cir. 2019) .........................................................13

*McClendon v. Ga. Dep't of Cmty. Health*,
   261 F.3d 1252 (11th Cir. 2001) ...........................................................7

*Planned Parenthood of Idaho, Inc. v. Wasden*,
   376 F.3d 908 (9th Cir. 2004) ...............................................................7

*Rayford v. City of Detroit*,
   347 N.W.2d 210 (Mich. App. 1984)...................................................14

*Whole Woman's Health v. Jackson*,
   142 S. Ct. 522 (2021)....................................................................*passim*

*Ex parte Young*,
    209 U.S. 123 (1908)................................................................................8

**Statutes**

15 U.S.C. § 1681s ................................................................................14

15 U.S.C. § 1681n ...............................................................................14

15 U.S.C. § 1681o ...............................................................................14

42 U.S.C. § 2000a-3(a) ......................................................................14

52 U.S.C. § 20510 ..............................................................................14

Fair Credit Reporting Act ...................................................................14

Fla. Stat. § 171.005 ..............................................................................3

Fla. Stat. § 171.207 ..............................................................................3

Fla. Stat. § 171.207(a) ..........................................................................3

Fla. Stat.  § 171.208(a) .........................................................................3

Fla. Stat. § 171.208(h) ..........................................................................3

Fla. Stat. § 1001.03(8)....................................................................2, 10

Fla. Stat. § 1001.03(19)(b) ............................................................2, 9, 12

Fla Stat. § 1001.64(18)........................................................................11

Fla. Stat. § 1001.706(8).................................................................2, 11

Fla. Stat. § 1001.706(13)(b).........................................................2, 9, 12

Fla. Stat. § 1004.097(2)(f).................................................................12

Fla. Stat. § 1004.097(3)(f).................................................................12

Fla. Stat. § 1004.097(3)(g).................................................................12

Fla. Stat. § 1004.097(4)(a) ................................................................... 1

Fla. Stat. § 1008.32(2)(a) ............................................................... 10, 11

Fla. Stat. § 1008.32(4)(b), (c) ............................................................ 11

Tex. Health & Safety Code § 171.204(a) ............................................... 3

Tex. Health & Safety Code § 171.205(a) ............................................... 3

Texas Occupational Code § 164.055 ...................................................... 5

**Other Authorities**

BOG Regulation 1.001(5)(a)-(b) .......................................................... 12

BOG Regulation 4.004(5), (6) ............................................................. 12

**INTRODUCTION**

In *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 525, 532–37, 539 (2021), the Supreme Court held that the *Ex parte Young* exception to sovereign immunity permitted abortion providers to sue various Texas medical licensing authorities to challenge a state-law abortion restriction that primarily relied on private citizens' civil suits for its enforcement (hereinafter referred to as "S.B. 8"). As the Court found, "each of those individuals [against whom the suit could proceed was] an executive licensing official who may or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code, including S.B. 8." *Id*. at 535 (Gorsuch, J., writing for four members of the Court); *see also id*. at 544 (finding that these "state executive officials . . . retain authority to enforce" S.B. 8) (Roberts, C.J., writing for another four members of the Court, concurring in judgment in part and dissenting in part).

The same is true here, only more so. As the Court noted in its January 24, 2022 Order, "[l]ike the statute at issue in *Jackson*, some parts of H.B. 233 are enforceable through a private right of action." Order at 1, ECF No. 63. The Court cited specifically to § 1004.097(4)(a), Fla. Stat. (2021), which provides that any "person injured by a violation of" H.B. 233's Anti-Shielding Provisions "may bring an action . . . in a court of competent jurisdiction." Unlike S.B. 8, H.B. 233 does not

purport to make that private right of action the "exclusive" means of enforcing the Anti-Shielding Provision (or any of the other H.B. 233 provisions at issue in this litigation). Moreover, there are ample provisions of state law that give state officials not only the power, but also in some cases, the duty to enforce H.B. 233. None of those provisions are restricted in any way by H.B. 233's new private right of action. The named Defendants are members of the state entities specifically charged with implementing H.B. 233's Survey Provisions. *See* § 1001.03(19)(b), Fla. Stat. (2021) (State Board of Education); *id*. § 1001.706(13)(b) (Board of Governors). Defendants also retain the authority to enforce all the provisions at issue in this litigation— including the Survey, Recording, and Anti-Shielding Provisions. *See* § 1001.03(8), Fla. Stat. (2021); *id.* § 1001.706(8). In Justice Gorsuch's words, they "may or must" take action for violations of those provisions.

Thus, if *Jackson* has any relevance, it provides further reason to deny Defendants' motion to dismiss and permit Plaintiffs to proceed with their challenges to the relevant provisions of H.B. 233. The Anti-Shielding Provisions, which are the *only* provisions of H.B. 233 that are enforceable through a private right of action, are *also* enforceable by state executive officials—including Defendants—through a host of direct and indirect mechanisms. Just as the suit in *Jackson* could proceed

- 2 -

against the Texas state licensing authorities, so too may this suit proceed against Defendants.

## BACKGROUND

In *Jackson*, the Supreme Court considered a newly enacted Texas statute, S.B. 8, which prohibited physicians from knowingly performing an abortion if the physician detected a fetal heartbeat unless a medical emergency demanded it. *See* 142 S. Ct. 522 (2021); Tex. Health & Safety Code §§ 171.204(a), 171.205(a). As a matter of enforcement, however, the law contained several provisions broadly prohibiting state officials from ensuring compliance with the law. *Id.* §§ 171.005, 171.207. Instead, it created what the law referred to as an "exclusive[]" private right of action, *Id.* § 171.207(a), conferred on "[a]ny person, *other than* an officer or employee of a state or local government," against anyone who violated S.B. 8's restrictions. *Id.* § 171.208(a) (emphasis added). The statute even went so far as to explicitly prohibit the state of Texas, "a state official, or a district or county attorney" from intervening in such an action. *Id.* § 171.208(h).

As Chief Justice John Roberts recognized, the peculiar "array of stratagems" was clearly designed by Texas "to shield its unconstitutional law from judicial review," and it operated as designed to "effectively chill the provision of abortions in Texas." *Jackson,* 142 S. Ct. at 543-44 (Roberts, C.J., concurring in the judgment

in part and dissenting in part). The effort was "unprecedented," and "no party" was able to "identif[y] any prior circumstance in which a State" had adopted a similarly structured prohibition aimed at constitutionally protected activity. *Id.* at 549 & n.4 (Sotomayor, J., concurring in judgment in part and dissenting in part).

Immediately, Texas abortion providers brought suit in federal district court seeking to enjoin enforcement of S.B. 8, arguing that it violated Texas women's federal constitutional right to obtain pre-viability abortions. *Id.* at 530 (majority op.). The defendants named in the suit included several Texas executive officials with authority over medical licensing, including the executive directors of the Texas Medical Board, Board of Nursing, and Board of Pharmacy and the executive commissioner of the Texas Health and Human Services Commission. *Id.* The officials moved to dismiss the suit on the ground that it was barred by state sovereign immunity. *Id.* at 531. The district court denied the motion, and the Supreme Court granted interlocutory review. *Id.*

The Court affirmed the district court's denial of the licensing officials' motion to dismiss, with eight of the nine justices concluding that the plaintiffs' claims fell into the *Ex parte Young* sovereign immunity exception that permits "private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id.* at 532, 535-36 (citing *Ex*

*parte Young*, 209 U.S. 123, 159–160 (1908)) (Gorsuch, J., writing for four justices); *see also id*. at 544 ("[P]etitioners may bring a pre-enforcement suit challenging the Texas law in federal court under *Ex parte Young*, because there exist state executive officials who retain authority to enforce it") (Roberts, C.J., concurring in judgment in part and dissenting in part, joined by three additional justices).

The Court reasoned that, notwithstanding S.B. 8's creation of an "exclusive" private right of action and broad limitations of state officials' authority in some respects, the statute nevertheless made clear that S.B. 8 must "not be construed to . . . limit the enforceability of any other laws that regulate or prohibit abortion." *Id.* at 536 (alterations in original) (quoting Tex. Health & Safety Code § 171.207(b)(3)). This savings clause was significant because "the licensing-official defendants *are* charged with enforcing 'other laws that regulate . . . abortion.'" *Id.* (alterations and emphasis in original). For example, Texas Occupational Code § 164.055 provided that the Texas Medical Board "shall take an appropriate disciplinary action against a physician who violates . . . Chapter 171, Health and Safety Code," in which S.B. 8 was codified. *Id.* (alterations in original). Because "[e]ach of these individuals is an executive licensing official who may or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code," the Court

concluded that *Ex parte Young* authorized a suit to enjoin that enforcement insofar as it pertained to S.B. 8. *Id.* at 535.

The right of action created by H.B. 233 is nothing like the "novel procedural machinations" that were built into S.B.8. *Id.* at 549 n.3 (Sotomayor, J., concurring in judgment in part and dissenting in part). Though H.B. 233 was likewise enacted out of hostility to constitutional rights, the Florida Legislature utilized a far more common structure that is mirrored many times over in other areas of the law. In the same manner as the Civil Rights Act of 1964 and countless other laws, the statute provides private citizens with one means of enforcing its Anti-Shielding Provisions. But this private mechanism merely supplements Defendants' enforcement authority, it does not supplant it. By its terms, the cause of action is much narrower than S.B. 8's, and clearly not the "exclusive" means of enforcing *any* of H.B. 233's provisions.

## ARGUMENT

Nothing in *Jackson* suggests that Plaintiffs lack standing to bring their claims against Defendants. To the extent *Jackson* is relevant to these proceedings, it does just the opposite, confirming that Plaintiffs may properly proceed.

### A. In *Jackson*, the defendants argued they had sovereign immunity, an argument Defendants do not make in their motion to dismiss.

As an initial matter, *Jackson* considered whether the plaintiffs' claims fell within the *Ex parte Young* exception to sovereign immunity. *See id.* at 535.

Defendants do not raise a sovereign immunity defense to Plaintiffs' challenge to H.B. 233. *See* Defs.' Mot. to Dismiss Pls.' Am. Compl. & Inc. Mem. of Law ("Mot. to Dismiss"), ECF No. 40. And "[u]nlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction," meaning that sovereign immunity should be "ignored by the court if not raised." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001).

Instead, Defendants contend that the Court lacks jurisdiction under Article III, asserting that Plaintiffs' claims are not ripe, and that they lack standing. Order at 1, ECF No. 63; *see also Eternal Word Television Network, Inc. v. Sebelius*, 935 F. Supp. 2d 1196, 1213 (N.D. Ala. 2013). ("[S]tanding and ripeness tend to overlap significantly in the context of pre-enforcement challenges to laws and regulations." (citing *ACLU v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993))). Although some circuits treat Article III standing and *Ex parte Young* as functionally the same, *see, e.g.*, *Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir. 2018); *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004), in *Jacobson v. Fla. Sec'y of State*, the Eleventh Circuit made clear that it does not share that view. 974 F.3d 1236, 1256

- 7 -

(11th Cir. 2020) ("Article III standing and the proper defendant under *Ex parte Young* are separate issues.") (cleaned up). The court stated that, regardless of *Ex parte Young*'s application, the traditional test for standing continues to apply, and it is satisfied when a plaintiff's injuries are fairly traceable to a defendant and redressable by relief against that defendant. *Id.*

For the reasons set forth in Plaintiffs' initial opposition, that standard is met with regard to each of the defendants in this case. And the intricacies at issue in *Jackson* because of the peculiar structure of S.B. 8 do not change that analysis.

### B. The principles enunciated and applied in *Jackson* confirm that Plaintiffs should be permitted to proceed with their claims.

But even if *Jackson* can be more broadly applied to the questions of standing that Defendants raise (or if Defendants' motion could be construed to raise sovereign immunity), Defendants' motion to dismiss must be rejected for much the same reason as the Texas licensing officials' motion to dismiss was rejected in *Jackson*: each of the prohibitions in H.B. 233 that Plaintiffs challenge is enforceable by Defendants pursuant to their broad authority to ensure compliance with state law. In fact, unlike the novel measures Texas adopted to evade judicial review in S.B. 8, H.B. 233 does not contain even a nominal limitation on state officials' ability to enforce its provisions. In other words, each of the Defendants is an official who "may or must take enforcement actions against the [plaintiffs] if they violate the terms of"

H.B. 233. *Jackson*, 142 S. Ct. at 535. And, as set forth in the Amended Complaint, Plaintiffs have a more than reasonable basis to fear that Defendants will do precisely that. *See* Am. Compl., ECF No. 35. Those fears have become even more credible since Plaintiffs filed that pleading. *See* discussion *infra* note 3.

There can be no serious dispute that Defendants have authority to enforce H.B. 233's Survey Provision. The plain text of the law commands Defendants to "select or create" the Survey required by H.B. 233 and "require" each public post-secondary institution to conduct that Survey on an annual basis, and it directs Defendants to annually compile and publish the assessments resulting from that Survey by September 1 of each year, beginning on September 1, 2022. § 1001.03(19)(b), Fla. Stat. (2021) (Board of Education); *id.* § 1001.706(13)(b) (Board of Governors). As Plaintiffs explained in their initial opposition to the motion to dismiss, requiring that students' and faculties' political views be disclosed to school administrators and eventually published to the world at large will inevitably chill their exercise of First Amendment rights. *See* Opp. to Mot. to Dismiss at 6-18, ECF 43 (citing, *inter alia*, *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2379 (2021), and *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)). The Defendant Board Members' mandating the assessments and publishing the results will directly cause these injuries-in-fact, and an order from this Court enjoining the Defendant

Board Members from fulfilling these nondiscretionary duties would redress Plaintiffs' injuries.

But, in addition, Defendants are broadly empowered to enforce *all* of the provisions of H.B. 233 that Plaintiffs challenge—including not just the Survey Provisions, but also the Recording and Anti-Shielding Provisions. Indeed, Defendants' duties to enforce compliance with the law are *mandatory* by their terms. Thus, Defendants are state executive officials who "may or must" take action if any of the provisions of H.B. 233 are violated. *See Jackson*, 142 S. Ct. at 537-38. For example, § 1001.03(8), Fla. Stat., provides that the Defendant Board of Education members "*shall* enforce compliance with law" by the institutions it supervises, which includes all institutions within the Florida College System. § 1001.03(8), Fla. Stat. (emphasis added).

The Defendant Commissioner of Education has additional independent obligations under Florida law to ensure that institutions under the jurisdiction of the Board comply not only with all applicable laws, but also State Board rules. Specifically, § 1008.32(2)(a) provides, "[t]he Commissioner of Education may investigate allegations of noncompliance with law or state board rule and determine probable cause. The commissioner shall report determinations of probable cause to the State Board of Education", which in turn "shall require" the institution's board

of trustees to document compliance. § 1008.32(2)(a), Fla. Stat.[1] And if the Defendant Board of Education Members determine that the institution "is unwilling or unable to comply with law or state board rule within the specified time," the Board is empowered to take a range of actions, including withholding education funding and declaring the institution ineligible for competitive grants. §§ 1008.32(4)(b), (c), Fla. Stat.

Similarly, § 1001.706(8), Fla. Stat., provides that the Defendant Board of Governors Members "have responsibility for compliance with state and federal laws, rules, regulations, and requirements" by the institutions it supervises, which includes all of Florida's state universities. § 1001.706(8), Fla. Stat. The Board of Governors has adopted regulations that provide it with the same enforcement mechanisms available to the Board of Education and Commissioner of Education, including requiring a university's board of trustees to document compliance, withholding a

---

[1] The power that the Board has over the trustees is particularly meaningful, given that, at Florida's post-secondary institutions, trustees can wield enormous power over an individual faculty member's retention and professional advancement, as the trustees are responsible for the personnel program governing the "compensation and other conditions of employment" of all employees, including "academic freedom and responsibility; promotion; assignment; demotion; transfer; . . . disciplinary actions; complaints; . . . and separation and termination from employment." § 1001.64(18), Fla Stat.

university's education funding, and declaring the university ineligible for competitive grants. BOG Regulation 4.004(5), (6).[2]

H.B. 233 is undeniably a state law, and pursuant to these authorities, each of the Defendant state executive officials is directly responsible for investigating and punishing violations of the provisions of H.B. 233 that Plaintiffs challenge in this litigation. If Florida public colleges and universities decline to participate in the assessments mandated by the Survey Provisions, §§ 1001.03(19)(b), 1001.706(13)(b), Fla. Stat., or violate the Anti-Shielding Provisions by failing to teach students "ideas and opinions that they may find uncomfortable, unwelcome, disagreeable, or offensive," §§ 1004.097(2)(f), (3)(f), Fla. Stat., or prohibit students from making the recordings that the Recording Provision authorizes, § 1004.097(3)(g), Fla. Stat., Defendants would have the authority to take action—indeed, would have a "*duty* . . . to bring disciplinary actions against them.*" Jackson*, 142 S. Ct. at 537 (emphasis added). This duty is sufficient in itself to establish a credible threat of enforcement, *see id.*, and Plaintiffs have more than established a

---

[2] Florida Universities' boards of trustees possess, if anything, even more power to affect individual faculty's careers in response to the Board of Governors' demands than their counterparts in the Florida College System; in addition to having all of the same authority to set the institutions' terms of employment, they are explicitly the "sole public employer" of all of a university's public employees. BOG Regulation 1.001(5)(a)-(b).

credible threat of this enforcement through other indicators as well.[3] Thus, each of the injuries from H.B. 233 that Plaintiffs describe in their initial opposition is "fairly traceable to [each] defendant's conduct, as opposed to the action of an absent third party," and "it is likely, not merely speculative, that a favorable judgment will redress [their] injur[ies]." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (cleaned up). Plaintiffs accordingly should be permitted to proceed with their claims.

Ultimately, what H.B. 233 does in creating a private right of action to supplement official enforcement of its Anti-Shielding Provisions is not particularly unusual, and it bears little resemblance to the unprecedented—and unsuccessful—

---

[3] For example, as Plaintiffs allege in the Amended Complaint, remarks by Governor DeSantis and H.B. 233's co-sponsor, Representative Sabatini, have indicated that the intention is to use H.B. 233 to cut funding from public colleges and universities. ECF No. 35, ¶¶ 79, 80. And Defendant Commissioner Corcoran has bragged about having "censored or fired or terminated numerous teachers" whom he views as having engaged in "indoctrinat[ing] students." *Id*. ¶ 6. There is nothing in the law that would preclude any of the Defendants from using their powers to aggressively enforce perceived violations of H.B. 233. And, since Plaintiffs filed their complaint, there have already been reports of fears of retribution driving institutions to chill speech by faculty that they fear might cause state officials to retaliate against them. *See, e.g*., Report of the Faculty Senate Ad Hoc Committee on Academic Freedom at 18, *available at* https://drive.google.com/file/d/1mB6mjqdE6bqdQcXOhX_5pUp RhnSik2X8/view (detailing a culture of fear at Florida's higher learning institutions, including among many other examples, an incident in which changes were urged to a doctoral concentration entitled "Critical Studies of Race, Ethnicity, and Culture in Education" out of fear that maintaining such a concentration could cost top University administrators their jobs).

measures Texas undertook to insulate S.B. 8 from judicial review. The U.S. Code and the statutory compilations of the states are replete with instances in which legislatures have allowed injured private citizens an independent method of enforcing a legal prohibition so that they are not entirely dependent on government officials' discretion to obtain relief. *See, e.g.*, 42 U.S.C. § 2000a-3(a) (providing a private right of action to a "person aggrieved" by a violation of Title II of the Civil Rights Act of 1964, which prohibits discrimination in public accommodations); 52 U.S.C. § 20510 (permitting both the Attorney General and a "person aggrieved by a violation" of the National Voter Registration Act to "bring a civil action in an appropriate district court for such declaratory or injunctive relief"); 15 U.S.C. §§ 1681s, 1681n, 1681o (allowing for both official and private enforcement of the Fair Credit Reporting Act); *Rayford v. City of Detroit*, 347 N.W.2d 210, 213 (Mich. App. 1984) ("The mere fact that a statute designates a public official or body as its enforcer does not deprive an individual of a private right of action seeking its enforcement."); *Cnty. of Hawaii v. Ala Loop Homeowners*, 235 P.3d 1103, 1120 (Haw. 2010) (concluding private right of action existed to enforce land use permit restrictions also enforceable by county officials). But these private rights of action are intended to augment official enforcement, not to supplant it. And they have never been an obstacle to obtaining pre-enforcement judicial review in a suit against

government officials. In fact, many of the landmark cases in U.S. history grew out of pre-enforcement challenges to enjoin government officials from enforcing statutes that also provided a concurrent private right of action. *See, e.g.*, *Heart of Atlanta Motel, Inc. v. United States*, 231 F. Supp. 393, 394 (N.D. Ga.), *aff'd*, 379 U.S. 241 (1964) ("This is a complaint filed by Heart of Atlanta Motel, a large downtown motel in the city of Atlanta, regularly catering to out of state guests, praying for a declaratory judgment and injunction to prevent the Attorney General of the United States from exercising powers granted to him under the Civil Rights Act of 1964."); *Katzenbach v. McClung*, 379 U.S. 294, 295 (1964) ("This complaint for injunctive relief against [the Attorney General] attacks the constitutionality of the Act as applied to a restaurant.").

Even Texas's deliberate attempt to displace this long-standing tradition was ultimately insufficient to prevent the *Jackson* plaintiffs from pursuing their suit against the executive licensing officials responsible for disciplining healthcare workers' violations of state law. *See Jackson*, 142 S. Ct. at 537-38. Here, where there is no suggestion Florida even attempted to similarly shield H.B. 233 from the Court's review, this case presents a much easier question. Defendants are the state officials responsible for enforcing the provisions of H.B. 233 that have already and will

continue to cause Plaintiffs' injuries. Plaintiffs thus have standing to pursue their challenge.

## <u>CONCLUSION</u>

For the reasons stated above and in Plaintiffs' original opposition, the motion to dismiss should be denied. The Supreme Court's decision in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 525, 532–37, 539 (2021), does not require a different result. If anything, it provides further reason to deny Defendants' motion and allow Plaintiffs to proceed with their claims.

## <u>LOCAL RULES CERTIFICATION</u>

Undersigned counsel certifies that this brief contains 3,682 words, excluding the case style, table of contents, table of authorities, and certificate of service.

Respectfully submitted this 31st day of January 2022.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
Thomas A. Zehnder
Florida Bar No. 0063274
Robyn M. Kramer
Florida Bar No. 0118300
King, Blackwell, Zehnder
& Wermuth, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
tzehnder@kbzwlaw.com
rkramer@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Alexi M. Velez*
Jyoti Jasrasaria*
Spencer Klein*
Joseph Posimato*
Noah Baron*
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, DC 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
melias@elias.law

- 17 -

efrost@elias.law
avelez@elias.law
jjasrasaria@elias.law
sklein@elias.law
jposimato@elias.law
nbaron@elias.law

*Counsel for Plaintiffs*
*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2022, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send

a notice of electronic filing to all counsel of record.

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

- 18 -