**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

WILLIAM A. LINK, et al.,

    *Plaintiffs*,

v.                             Case No.: 4:21cv271-MW/MAF

RICHARD CORCORAN, et al.,

    *Defendants*.

_____/

**SUPPLEMENTAL BRIEF ADDRESSING THE IMPORT OF *WHOLE
WOMAN'S HEALTH V. JACKSON*, 142 S. CT. 522, 532–37, 539 (2021) ON
DEFENDANTS' PENDING MOTION TO DISMISS**

    Pursuant to this Court's January 24, 2022 Order (ECF No. 63), Defendants file

this supplemental brief addressing the import of *Whole Woman's Health v. Jackson*,

142 S. Ct. 522, 532–37, 539 (2021) on Defendants' pending Motion to Dismiss.

### INTRODUCTION

    "Generally, States are immune from suit under the terms of the Eleventh

Amendment and the doctrine of sovereign immunity."  *Jackson*, 142 S. Ct. at 532.

To be sure, "there is no freestanding constitutional right to pre-enforcement review

in federal court." *Id.* at 539 (Thomas, J., concurring in part and dissenting in part);

*accord* 537-38 ("This Court has never recognized an unqualified right to pre-

enforcement review of constitutional claims in federal court"). However, the

Supreme Court in *Ex parte Young*, 209 U.S. 123, 159–60 (1908), acknowledged a "narrow exception" for a "negative injunction" against a governmental defendant, which "allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Jackson*, 142 S. Ct. at 532. As explained below, the limited exception to Eleventh Amendment immunity afforded under *Ex parte Young* does not countenance the injunctive relief that Plaintiffs seek against Defendants.

## ARGUMENT

While, *Jackson* lacks a holistic, stand-alone majority opinion, a majority of the Justices agreed on several key points that are critical to this litigation.

## I.   THIS COURT LACKS AUTHORITY TO PROSPECTIVELY ENJOIN HB 233 AND ITS PRIVATE CAUSES OF ACTION.

In *Jackson*, five Justices made plain that the petitioners could not parlay S.B. 8's directive that enforcement of S.B. 8 be sought "through . . . private civil actions", *id.* at 530, into an injunction against "any and all unnamed private persons who might seek to bring their own S.B. 8 suits." *Id.* at 535. While the traditional equitable principles and the historical practice of the Court allow for "a federal court exercising its equitable authority" to "enjoin named defendants from taking specified unlawful actions," "no court may lawfully enjoin the world at large . . . or purport to enjoin challenged laws themselves." *Id.* at 535 (internal citations omitted).

Here, Plaintiffs allege that compliance with HB 233—and its Anti-Shielding Provisions in particular—are enforced through the private cause of action provided for in section 1004.097(4)(a). *See* ECF No. 35 ¶ 4.[1]  As discussed below in Section II, Defendants do not have any enforcement authority as to the private cause of action.  *See* § 1004.097(4)(a), Fla. Stat. Even if the Defendants had enforcement authority, under the reasoning of *Jackson*, this Court should decline Plaintiffs' request to parlay that authority into an injunction against any and all unnamed private persons who might seek to utilize HB 233's private cause of action.  Enjoining the world at large or HB 233's Cause of Action Provision itself would exceed *Ex parte Young*'s "narrow exception" allowing a federal court to prevent "a state executive official from enforcing state laws that are contrary to federal law." *Jackson*, 142 S. Ct. at 532.

---

[1]

> To ensure compliance, the law creates an adversarial relationship between students and faculty and their institutions of higher education: HB 233 provides a private right of action to anyone who feels they have been "shielded" from the law's favored speech or that their "expressive rights" have otherwise been violated, *id.* at § 1004.097(4), and separately, permits students to record lectures to obtain evidence in support of any lawsuits or any complaints filed with the State's public colleges and universities, including complaints and lawsuits to *enforce* the Anti-Shielding Provisions, *id.* at § 1004.097(3)(g).

ECF No. 35, ¶ 4 (emphasis added).

Enjoining the Defendants with respect to the private cause of action would also run afoul of Article III because the Defendants would not be adverse litigants to the parties who bring a private cause of action. In *Jackson* the Court rejected Petitioners' court-and-clerk theory for this reason: "no case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Id*. at 533. Like the court and clerk defendants in *Jackson*, the Defendants in this case have no case or controversy with the parties bringing the private cause of action.

Moreover, the private cause of action for violation of the free expression rights afforded under the statute is enforced exclusively against institutions of higher education by a private party. *See* § 1004.097(4)(a), Fla. Stat. (providing a cause of action against "a public institution of higher education"). Plaintiffs do not claim to be representatives of any higher education institution[2], and do not stand in the shoes of any public institution of higher education. To the extent the unconstitutionality of the Anti-Shielding provision is necessary as a defense, it could be raised as a defense in a court of competent jurisdiction. *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948)

---

[2] It is unclear if Plaintiffs fully acknowledge that only colleges and universities are subject to the cause of action. Plaintiffs blend and obscure their claimed injuries with the cause of action against public institutions, referencing lawsuits against their colleges and universities while claiming the threats to members of "invasive and injurious harm, including the constant possibility of being recorded when giving lectures, or being forced to endure public and professional harm through vindictive lawsuits." ECF No. 35, ¶ 9.

4

(upholding the right to raise the unconstitutionality of restrictive covenants as a defense because "it would appear beyond question that the power of the State to create and enforce property interests must be exercised within the boundaries defined by the Fourteenth Amendment").

As *Jackson* makes crystal clear, a federal court "may enjoin *named defendants* from taking *specified unlawful actions*" but may not "lawfully enjoin the world at large or purport to enjoin challenged laws themselves. *Jackson*, 142 S. Ct. 522, 535 (2021) (cleaned up and emphasis added). Enjoining Defendants does not afford Plaintiffs any relief because any aggrieved individual would still have the right to pursue a cause of action under the statute against a college or university that would be adjudicated by a court of competent jurisdiction.

## II.   SOVEREIGN IMMUNITY [3] BARS PLAINTIFFS' PRE-ENFORCEMENT CHALLENGE IN FEDERAL COURT AGAINST DEFENDANTS

### a.   Plaintiffs' Allegations of Defendants' Enforcement Authority Falls Short of what Jackson Requires.

---

[3] Defendants assertion of Sovereign Immunity at this juncture is still timely. *See Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1255 n.16 (11th Cir. 2014) (*quoting Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982)) ("[T]he Eleventh Amendment defense . . . may be raised by the State for the first time on appeal."); *United States v. Land, Shelby Cnty.*, 45 F.3d 397, 398 n.2 (11th Cir. 1995) ("Sovereign immunity . . . is an issue of subject matter jurisdiction and, thus, may be raised at any time."); *A. L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urb. Dev.*, 611 F.2d 997, 1001 n.2 (5th Cir. 1980) (citation omitted) ("[S]overeign immunity defense was [not] raised belatedly because it is an affirmative defense and . . . want of consent is a fundamental defect that may be asserted at any time, and that is not subject to estoppel.").

*Jackson* has applicability to this case beyond what it says about a private cause of action as the enforcement mechanism in the context of *Ex parte Young*.   In *Jackson*, eight Justices agreed that the case could "proceed past the motion to dismiss stage against . . . [four] defendants with *specific disciplinary authority* over medical licensees." *Id.* at 539 (emphasis added).   Each of the four individuals identified in *Jackson* was an executive licensing official who was statutorily authorized elsewhere in Texas law to "take enforcement actions against the petitioners"[4] if they violated the terms of S.B. 8, *id.* at 535, and such authority was sufficient for purposes of *Ex parte Young*.   The Petitioners in *Jackson* specifically alleged that the licensing officials had "the authority and duty to enforce other statutes and regulations against [Petitioners] that could be triggered by a violation of S.B. 8." *Whole Woman's Health, et al. v. Jackson, et. al*, Case No. 1:21-cv-00616-RP, ECF No. 1. at ¶ 107 (W.D. Tex. 2021).   In stark contrast to those Texas regulatory statutes, as discussed in section II.b. below, none of the Defendants possess the authority to take the type

---

[4] While S.B. 8 indicated it was to be "exclusively" enforced through private civil actions, it also contained a savings clause that S.B. 8 "may not be construed to . . . limit the enforceability of any other laws that regulate or prohibit abortions." *Jackson*, at 536.   These "other laws" were the basis for the Court's conclusion that the four licensing officials possessed the enforcement authority sufficient to satisfy *Ex parte Young*.   For example, the Court cited Texas Occupational Code § 164.055, entitled "Prohibited Acts Regarding Abortions", which stated the that the Texas Medical Board "shall take an appropriate disciplinary action against a physicians who violates . . . Chapter 171, Health and Safety Code," which is part of Texas statutory law that includes S.B. 8.   *Id*.

of enforcement actions against the Plaintiffs that the Court in *Jackson* found to be sufficient for purposes of *Ex parte Young*.

At the other end of the enforcement spectrum, five Justices held that the *Ex parte Young* exception does not permit injunctions against "individuals [who] *do not enforce state laws*," such as state-court judges and state-court clerks.  *Id.* at 532 (emphasis added). The same five Justices held that petitioners also failed to identify "any enforcement authority the attorney general possesses in connection with S.B. 8 that a federal court might enjoin him from exercising." *Id.* at 534, and as such, he was entitled to Sovereign Immunity.  Defendants in this case fall into this latter category.

 At bottom, a majority of the Court recognized that the *Ex parte Young* exception "extends no further than permitting private parties in some circumstances to prevent state officials from bringing an action to enforce a state law that is contrary to a federal law." *Id.* at 540 (Thomas, J., concurring in part and dissenting in part); *id*. at 536 ("[We agree with all of these principles" advanced by Justice Thomas, "our disagreement is restricted to their application.").

Here, Plaintiffs allege that Defendants have the following enforcement authority with respect to HB 233. Collectively, the members of the Board of Governors **(1)** have the "duty to operate, regulate, control, and be fully responsible for the management of the whole publicly funded State University System," *see*

section 1001.705(2), Florida Statutes; **(2)** "shall require each university to conduct an annual assessment of the intellectual freedom and viewpoint diversity at that Institution," and to create a "survey to be used by each state university" for that purpose, *see* section 1001.706(13)(B), Florida Statutes; **(3)** are prohibited from shielding students', faculty members', or staff members' access to, observation of, ideas and opinions that they may find uncomfortable, unwelcome, disagreeable, or offensive, *see* section 1001.706(13)(a)(2), (c), Florida Statutes; and **(4)** are responsible for HB 233's requirement that "a Florida . . . state university may not shield students, faculty, or staff from expressive activities," *see* section 1004.097(3)(f), Florida Statutes, and a "student may record video or audio of class lectures . . . in connection with a complaint to the public institution of higher education where the recording was made, or as evidence in, or in preparation for, a criminal or civil proceeding," *see* section 1004.097(3)(g), Florida Statutes.  ECF No. 35, ¶ 40.

Plaintiffs make similar allegations with respect to members of the State Board of Education. Plaintiffs allege that such members **(1)** make up the "[c]hief implementing and coordinating body of public education in Florida except for the State University System," *see* section 1001.02(1), Florida Statutes; **(2)** "shall require each Florida College System institution to conduct an annual assessment of the intellectual freedom and viewpoint diversity of that institution," and to create a

"survey to be used by each institution" for that purpose, *see* section 1001.03(19)(b), Florida Statutes; **(3)** are prohibited from shielding students', faculty members' or staff members' access to, or observation of, ideas and opinions that they may find uncomfortable, unwelcome, disagreeable, or offensive, *see* section 1001.03(19)(a)(2), (c), Florida Statutes; and **(4)** are responsible for enforcing HB 233's requirements that "a Florida college system . . . may not shield faculty, or staff from expressive activities," see section 1004.097(3)(f), Florida Statutes, and a "student may record video or audio of class lectures . . . in connection with a complaint to the public institution of higher education where the recording was made, or as evidence in, or in preparation for, a criminal or civil proceeding," *see* section 1004.097(3)(g), Florida Statutes.  ECF No. 35, ¶ 41.

As to Commissioner Corcoran, Plaintiffs allege that he is the "chief educational officer of the state and the sole custodian of the K-20 data warehouse, and is responsible for giving full assistance to the State Board of Education in enforcing compliance with the mission and goals of the K-20 education system except for the State University System," and his office is tasked with operating "all statewide functions necessary to support the State Board of Education, including strategic planning and budget development, general administration, assessment, and accountability."  ECF No. 35, ¶ 39.  Plaintiffs also acknowledge Commissioner Corcoran's role as a member of the Board of Governors.  *Id*.  Plaintiffs do not allege

that Commissioner Corcoran has any specific independent enforcement authority over colleges or universities apart from his statutory directive to support the Board of Education and his membership on the Board of Governors.

These allegations are insufficient under *Jackson*. Unlike the four executive licensing officials identified in *Jackson*, it is not alleged that the Defendants here have authority to "take enforcement actions against the petitioners" with respect to HB 233. *See Jackson*, at 535.

**b. The State Actions Plaintiffs Seek to Enjoin Are Untethered to the Defendants' Enforcement Authority.**

Here, for many of the same reasons that Plaintiffs lack standing, *see,* ECF No. 40, pgs. 13-16, the actions Plaintiffs seek to enjoin which are alleged to cause their asserted injuries do not flow from the provisions of HB 233 that the Defendants enforce—or any other provision of state law enforced by Defendants—but rather, from speculative future actions of others. "[T]here is a common thread between Article III standing analysis and *Ex parte Young* analysis[.]" *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1210 (N.D. Fla. 2020) (*quoting Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013)), *affirmed,* 8 F.4th 1198. "[T]he requirements of *Ex parte Young* overlap significantly with the last two standing requirements—causation and redressability." *Id*. (*quoting Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir. 2018)). In particular, "there is a significant overlap between standing and *Ex parte Young's* applicability when the question is whether

the defendant public officials have a sufficient role in enforcing a challenged statute to be a cause of the injury." Wright and Miller, Causation, 13A Fed. Prac. & Proc. Juris. § 3531.5 (3d ed.) (internal quotations omitted); *id. see Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201–02 (11th Cir. 2021) ("[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." (*citing Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015) quotation marks omitted)).

The actions Plaintiffs seek to prevent that they allege cause their perceived harms are summarized in Paragraph 9 of the Amended Complaint:

> HB 233 will directly harm Plaintiffs by: (1) permitting Defendants to require that Plaintiffs disclose their political associations and ideologies *for the invidious purpose of cutting funding to Plaintiffs' colleges and universities*; (2) suppressing Plaintiffs' speech and free association by *threatening to defund public colleges and universities where their views and associations exist*; and (3) compelling faculty members to teach and adopt topics and viewpoints they would not otherwise teach or adopt by *threatening their colleges and universities with lawsuits and threatening faculty members themselves with invasive and injurious harm, including the constant possibility of being recorded when giving lectures, or being forced to endure public and professional harm through vindictive lawsuits.*

ECF No. 35, ¶ 9 (emphasis added). The actions that Plaintiffs seek to enjoin are outside the scope of enforcement authority that rests with Defendants, nor do Plaintiffs allege that the Defendants could enforce the types of actions against

Plaintiffs that they claim as prospective fears—namely, loss of funding and denial of tenure.

To start, Defendants have no control over appropriations.  *See* Art. IX, § 1(a) (vesting responsibility and authority with respect to funding of institutions of higher learning in the Legislature); *Graham v. Haridopolos*, 108 So. 3d 597, 608 (Fla. 2013) (holding "the Legislature's authority to set and appropriate for the expenditure of tuition and fees" to support the State University System was not transferred to the Board of Governors).  And there are no allegations that any of the Defendants are contemplating any litigation of any kind under HB 233—let alone threatening litigation against any named Plaintiff.  Moreover, enjoining Defendants from such actions would not serve to control the actions of other actors who have the actual authority over funding or those individuals who may possess a right to pursue a private cause of action under the statute.[5] It is for this reason that *Ex parte Young*

---

[5]  As five Justices in *Jackson* recognized, the constitutionality of a state law may be raised as a defense to state law claims in response to the private cause of action brought in a court of competent jurisdiction.  *See Jackson*, at 538 ("The truth is, too, that unlike the petitioners before us, those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments. This Court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court. . . . To this day, many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one. *See, e.g., Snyder v. Phelps*, 562 U.S. 443, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (First Amendment used as a defense to a state tort suit.)").

contemplates enjoining specific state actors with true enforcement authority, not broadly and universally enjoining state laws.

When analyzing the enforcement authority of these Defendants, it is important to understand the governance structure applicable to post-secondary institutions. The Defendants—the members of the Board of Governors, including Commissioner Corcoran, and the members of the Board of Education—regulate the individual institutions under their purview on a system-wide basis, and the individual institutions, in turn, regulate their own operations, including their faculty, staff, and students, within that system-wide framework. *See, e.g.*, Art. IX, § 7, Fla. Const.; § 1001.706(2)(a), Fla. Stat.; § 1001.71(1), Fla. Stat.; § 1001.02(6), Fla. Stat.; §1001.03(8), Fla. Stat.; §1001.65(1), Fla. Stat.; Board of Governors Regulation 1.001.

The Boards do not take actions against the individual university employees or students—such as any of the Plaintiffs—to force compliance with the law because the Boards exercise their authority over the system, and each individual institution is separately governed by a board of trustees within that system. This is true for the Board of Governors. *Compare* Art. IX, § 9(b), Fla. Const. ("A board of trustees shall administer each public university and a board of governors shall govern the state university system."); *with* Board of Gov. Regulation 1.001(1) (delegating all of the powers and duties necessary to and appropriate for the direction, operation,

management, and accountability of each state university").[6] And it is equally true for the Board of Education.  *Compare* § 1001.02, Fla. Stat. (granting authority to the Board of Education to provide top level planning functions for a public education system except for the state university system); *with* § 1008.32, Fla. Stat ("Florida College System institution boards of trustees shall be primarily responsible for compliance with law and state board rule.").   Thus, authority over faculty, staff, and students has been delegated to the various colleges and universities. While the Plaintiffs make allegations concerning the fall out of promotions or tenure decisions, they do not cite any statute or rule that afford these Defendants specific authority over those decisions.  Those decisions are controlled at the institutional level.

In short, the injuries that Plaintiffs allege are speculative and do not arise from Defendants' enforcement of HB 233.   Instead, the actions that would need to be enjoined to prevent Plaintiffs' alleged injuries are hypothetical future actions that would necessarily be performed by someone other than Defendants. This is exactly the type of requested pre-enforcement injunction that *Jackson* prohibits. *See Jackson*, 142 S. Ct. at 534. ("[F]uture promulgat[ion] of a rule that a governmental defendant might then undertake an enforcement action on, is a series of hypotheticals too far removed to justify the *Ex parte Young* exception.") (internal quotations omitted).

---

[6] Although the Board of Governors may revoke or modify delegated powers, *see* § 1001.706(11), Fla. Stat., there has been no allegation that the Board has done so or even intends to do so in a manner that would impact Plaintiffs.

Plaintiffs allegations on their face are built on impermissible conjecture and assumption about a prospective survey that the Board of Governors and the Board of Education might adopt in the future, and even further down the path of hypothetical horrors are the allegations of potential prospective harm that can only be carried out by persons other than defendants.

   *i. The Survey Provision*

   Defendants acknowledge that the Boards have implementation authority over some aspects of the Survey Provision, such as the selection or creation of an objective, nonpartisan, and statistically valid survey, requiring each institution to conduct an annual assessment, and the compilation and publishing of the results.  *See* §§ 1001.706(1), 1001.03(19)(b), Fla. Stat. But that is where Defendants' authority begins and ends with respect to Plaintiffs' allegations. The Board of Governors has no authority over future legislative funding decisions and is not involved in personnel actions—such as the tenure or promotion of individuals professors.

   To the extent Plaintiffs seek to enjoin Defendants from enforcing the Survey Provision on the basis that their political associations and ideologies disclosed through the survey will result in Plaintiffs being targeted for "budget cuts" and "defunding", *see* ECF No. 35 ¶ 9; 79, Defendants are not the proper public officials for purposes of *Ex parte Young*.  Any allegations concerning future budget cuts, *see generally* ECF No. 35 ¶¶ 22, 119, 133, or that tenure or promotion are "tethered to"

a survey, *id.* ¶¶ 25, 27, 29, 77, simply do not, and cannot, give rise to a potential future enforcement action by Defendants against the Plaintiffs. HB 233 does not direct any particular action by Defendants based upon the information disclosed in a survey, nor have Plaintiffs alleged any source of authority that would empower defendants to make such decisions.   More fundamentally, even if such decisions could somehow be tied to Defendants, funding decisions, tenure, and promotions are discretionary acts, outside of the reach of *Ex parte Young*. *See Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1028 (11th Cir. 1994), *aff'd sub nom. Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996) ("[T]he *Ex parte Young* doctrine cannot compel discretionary acts.").

    *ii.  The Recording Provision*

    With respect to the Recording Provision, Plaintiffs' alleged injuries concerning the Recording Provision are premised on future improper acts by individuals other than Defendants. *See, e.g.*, ECF No. 35, ¶ 89, and thus are not appropriate under *Ex parte Young.  See Jackson*, 142 S. Ct. at 534. ("[F]uture promulgat[ion] of a rule that a governmental defendant might then undertake an enforcement action on, is a series of hypotheticals too far removed to justify the *Ex parte Young* exception.") (internal quotations omitted).

    Additionally, any unauthorized publication of a recording in violation of HB 233 is not enforced by the Defendants, but rather, through a private cause of action

in a court of competent jurisdiction, s*ee* 1004.097(4)(b), Florida Statutes, which *Jackson* counsels against enjoining. *Jackson*, at 535. Moreover, under the relevant governance structure, it is the *institutions* that regulate their own faculty, staff, and students, not these Defendants.  Thus, Defendants are not the appropriate public officials for the purposes of *Ex parte Young*.  *See Jackson*, at 534.

*iii. The Anti-Shielding Provisions*

The Defendants acknowledge that they are bound to follow the Anti-Shielding Provisions, such as the obligation for the Boards themselves to not shield students and to ensure the institutions under their purview follow the law. *See* §§ 1001.03(19)(c), Fla. Stat., 1001.706(13)(c), Fla. Stat. But, here too, the Board Members' obligation to follow the law does not extend to the areas Plaintiffs seek to enjoin.

First, Plaintiffs clearly allege that the Anti-Shielding provision is *enforced* through the private right of action provided for in HB 233 and the recording provision.  *See, e.g.*, ECF No. 35, ¶¶ 4, 87, 99.  *Jackson* plainly holds such equitable relief would be improper. *Jackson*, at 535.

Second, the Boards have no part in the private cause of action provision in section 1004.097(4), Florida Statutes, because the Boards are not public institutions of higher education. *See* § 1004.097(2)(e) and (4)(a), Fla. Stat. ("'Public institution of higher education' means any public technical center, state college, state university,

law school, medical school, dental school, or other Florida College System institution as defined in s. 1000.21.").

Third, enjoining the Boards from following the obligations of the Anti-Shielding provisions would be meaningless to the allegations Plaintiffs make. Plaintiffs allege that they—faculty members and students— will be forced to comply with the Anti-Shielding Provision. *See*, e.g., ECF No. 35, ¶ 9.  However, where an individual university official is not complying with the Anti-Shielding Provisions of HB 233, any enforcement would be pursued by private individuals through the court system, the specific institution's complaint process, or both. *See* § 1004.097(4), Fla. Stat. The Boards have limited authority to take remedial actions against institutions that fail to comply with the law or the Boards' regulations where the institution's board of trustees is unwilling or unable to do so. *See* Board of Governors Regulation 4.004(6) and § 1008.32(4), Fla. Stat. The Boards have no ability to take actions against individual university employees or students—such as Plaintiffs—to force compliance with the law because the direct authority over faculty, staff, and students have been delegated to the institutions. *See, e.g*., Board of Governors Regulation 1.001 ("The intent of this regulation is to delegate powers and duties to the university boards of trustees so that the university boards have all of the powers and duties necessary and appropriate for the direction, operation, management, and

accountability of each state university."); and § 1004.65(1) and (2), Fla. Stat.

## III.   CHILLING EFFECT ALONE IS INSUFFICIENT TO SATISFY *EX PARTE YOUNG*.

The "'chilling effect' associated with a potentially unconstitutional law being 'on the books" is insufficient to 'justify federal intervention' in a pre-enforcement suit." *Jackson*, at 538.  Instead, Plaintiffs must put forth "proof of a more concrete injury and compliance with the traditional rules of equitable practice."   *Id*. Importantly, the "Court has consistently applied these requirements whether the challenged law in question is said to chill . . . *the freedom of speech* . . . or any other right."  *Id*.  (emphasis added).  Simply put, merely because Plaintiffs are bringing a First Amendment Challenge, they "are not entitled to a special exemption." *Id*.  Here, for the same reasons Plaintiffs lack standing and their claims are not ripe, *see* ECF No. 40, pgs. 8-21, they too fail to satisfy the *Ex parte Young* exception to Sovereign Immunity based upon their bare allegations of the "chilling effect" of HB 233 under *Jackson*.

### CONCLUSION

For the reasons stated in Defendants' Motion to Dismiss, ECF No. 40, this Court should dismiss Plaintiffs' Complaint. Should any claims remain after this Court rules on the pending Motion to Dismiss, *see Lewis v. Governor of Alabama*, 944 F.3d 1287, 1306 (11th Cir. 2019) ("Because we conclude that plaintiffs lack standing, we need not—may not—proceed to consider either whether the Attorney

General is a proper defendant under *Ex parte Young* . . . .”), *Jackson* dictates that Defendants are not the appropriate public official for purposes of *Ex parte Young* because they lack enforcement authority over many of the provisions Plaintiff challenge.

*/s/ GeorgeT. Levesque*
George T. Levesque (FBN 555541)
J. Timothy Moore, Jr. (FBN 70023)
Patrick M. Hagen (FBN 1010241)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302
Telephone: 850-577-9090
Facsimile: 850-577-3311
george.levesque@gray-robinson.com
tim.moore@gray-robinson.com
patrick.hagen@gray-robinson.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2021, the foregoing was filed with the Court's CM/ECF system which will serve a copy via email on the following co-counsel for Plaintiffs: Frederick S. Wermuth fwermuth@kbzwlaw.com, Thomas A. Zehnder, tzehnder@kbzwlaw.com, and Robyn M. Kramer rkramer@kbzwlaw.com, King, Blackwell, Zehnder, & Wermuth, P.A., P.O. Box 1631, Orlando, FL 32802-1631; and Marc E. Elias melias@elias.law, Elisabeth C. Frost efrost@elias.law, Alexi M. Velez avelez@elias.law, Christina Ford cford@elias.law, Jyoti Jasrasaria

jjasrasaria@elias.law, Spencer Klein sklein@elias.law, and Joseph Posimato jposimato@elias.law, Elias Law Group LLP, 10 G Street NE, Suite 600, Washington, DC 20002.

*/s/ GeorgeT. Levesque*
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.