# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM A. LINK, *et al.*

   Plaintiffs,

  v.

RICHARD CORCORAN, *et al.*,

   Defendants.

Case No. 4:21-cv-00271-MW-MAF

## **DECLARATION OF DR. ROBIN GOODMAN IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION**

I, Robin Goodman, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over the age of 18. I am fully competent to make this declaration. The following statements are based on my personal knowledge.

2. I am an English professor at Florida State University ("FSU"), where I have worked since 2001. I am a dues-paying member of the United Faculty of Florida ("UFF") and presently serve as a Senator of FSU's local chapter of UFF, as well as a member of the union's bargaining team. I previously served as director of the English Department's literature program at FSU, including from 2011 to 2014 and again from 2016 to 2018. I have published or edited 11 books, in addition to numerous published academic articles.

3.     My scholarship and teaching at FSU focus on postcolonial literature and theory, feminism, and critical and cultural theory. These subjects and the classes I teach often touch on sensitive and controversial topics. For example, in 2016 I taught a course entitled "Third World Cinema," which required my students to watch and discuss films based in or portraying the developing world. These films often concerned sensitive or controversial issues, including the use of terrorism and guerilla warfare. In one class I showed my students "Paradise Now," a Golden Globe-winning film presenting a fictionalized portrayal of two Palestinian men as they prepare for a suicide attack in Israel. In another, students watched and discussed "The Battle of Algiers," a film depicting clashes between Algerian rebels and French paratroopers during the Algerian war.

4.     From time to time, students have commented on what they may perceive to be my political views, as well as the views expressed by my teaching and scholarship. They have most often done so in end-of-semester reviews, which allowed both me and my institution to consider those comments in their appropriate context, including the specific class that the student was commenting on, and the specific views or statements to which they referred. To be clear: I have never and would never consider a student's political views—or how they might diverge from my own—in grading or in any of my assessment or interactions with the student. In addition, I, like many professors, often give voice to many different divergent

viewpoints—a suggestion of a viewpoint in my classroom is not always an endorsement, and in teaching controversial material, it is impossible to avoid statements that at least some among the student body may find controversial.

5. In my experience, context for these types of comments are absolutely critical: without knowing what subject matter or comment gave rise to the observation or complaint—and without having the benefit of the views of other students who were in the same classroom, studying the same subjects, and hearing the same statements—it is impossible to evaluate such observations or the weight they should be given, in any meaningful way.

6. I also research and teach on other controversial subjects. For example, I am the editor of a book, *Understanding Adorno, Understanding Modernism* (Bloomsbury 2020), about Theodor Adorno, a German philosopher and Marxist. I have also written on contemporary political issues, including in a 2019 article discussing how popular culture justifies the transfer of wealth and power to a select, privileged few, including individuals like Ivanka Trump. I believe that HB 233 targets the viewpoints I express in my writing and teaching, the vast majority of which are views with which Governor DeSantis or other supporters of HB 233 have explicitly expressed their disagreement. For example, Governor DeSantis and his supporters frequently assail critical theory, including Critical Race Theory, and so-called "cultural Marxism."

7.      I recently learned that the ideological viewpoint survey mandated by HB 233 could be distributed to students and faculty members at FSU, including me, as soon as April 4, 2022. The enactment of HB 233 has made me reluctant both to continue teaching certain courses again in the future and to express certain ideas in courses I continue to teach, for fear of retaliation as a result of HB 233. Among my concerns are that those controversial courses could lead one of the few students who have expressed dissatisfaction with their view of how those courses are taught could weaponize that dissatisfaction in the survey, which could then lead to cuts to funding to FSU or its English Department. Moreover, any such concerns voiced in the survey would necessarily be entirely out of context, meaning that they could be taken to mean—or used for—virtually any purpose the government desired, without having to deal with the nuanced context that such controversial courses necessarily raise.

8.      I understand that the Defendants have not produced a final version of the survey. I have seen some drafts, and they only exacerbate my concerns. If the surveys that are to be shortly implemented do in fact include questions along the lines of those that I have seen in the draft surveys, including vague questions about expression without any connection to context, I am afraid that it will stifle my speech, particularly in my classes that involve controversial subject matters, and make me hesitant to voice any view that could be particularly controversial—or perhaps even more to the point, refute positions that are factual and empirically

baseless—out of fear that it may cause a student to complain that they believe that in their classes there is bias as to the viewpoints expressed.

9. I am also concerned that whether I participate in the faculty survey or I do not, the result will be injury to my speech and associational rights. If I choose not to participate, then I have not contributed to the "data" pool that the government has made clear it intends to use to make retaliatory decisions, including about funding. But if I feel compelled to respond to try to protect my institution, it appears that the survey is likely to ask that I disclose and register my own sincerely-held political views, which are contrary to those held by Governor DeSantis and supporters of HB 233. I am concerned that responding to the survey honestly in this way will result in adverse consequences for FSU, including loss of funding and the inability to teach and discuss certain subjects and viewpoints that are not favored by supporters of HB 233. I am also deeply troubled by the proposed questions that effectively ask faculty to "report" on each other and staff—again, without any meaningful context whatsoever—on their perceptions about their viewpoints.

10. It also appears that the faculty survey is likely to ask that I disclose sensitive personal information, including my political affiliation, my religious beliefs, and my sexual orientation. I find this personally invasive and do not believe that these issues are my employer's business. This seems to me like the first step

towards the government publicly identifying faculty members by their political beliefs, religion, and sexual orientation.

11. Finally, I am also confused about how the survey provisions work in conjunction with other provisions of HB 233, or the other messages that the Florida legislature is clearly sending about what is, and what isn't, considered acceptable speech in the classroom. For example, a separate provision of HB 233 requires me not to shield my students from speech that makes them uncomfortable. Yet the draft survey I have seen appears to seek to measure and have students report on situations in which my own speech or other speech at the school may make them uncomfortable. At the same time, the Legislature has taken aim at teaching anything that it deems to be "critical race theory," it would seem, on the grounds that it makes some students uncomfortable. Even if I were able to predict how students might respond subjectively to any particular speech act, it would seem that I risk breaking a law whichever way I turn. This only further discourages me teaching or discussing certain subject matter with students.

12. I have read the Amended Complaint for Declaratory and Injunctive Relief (ECF No. 35) and hereby verify that, with the exception of the allegations therein that are unique to other Plaintiffs (*id*. ¶¶ 21-29, 34-38), the allegations of fact contained therein are true and correct to the best of my knowledge.

- 7 -

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of March, 2022, in Tallahassee, Florida.

*Robin Goodman* _____

Dr. Robin Goodman