IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**WILLIAM A. LINK, et al.,**

    *Plaintiffs*,

v.                                       Case No.: 4:21cv271-MW/MAF

**MANNY DIAZ JR., et al.,**

    *Defendants*.
_____/

## MOTION FOR PROTECTIVE ORDER
## AS TO THE DEPOSITION OF RICHARD CORCORAN AND
## INCORPORATED MEMORANDUM OF LAW

Defendants, through undersigned counsel and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, respectfully moves for a protective order prohibiting the deposition of Defendant Richard Corcoran, the former Florida Commissioner of Education[1] and a current member of the Florida Board of Governors.

---

[1] Mr. Corcoran resigned as Commissioner of the Florida Department of Education, effective April 30. At that time, he was no longer a party to the lawsuit and by operation of Federal Rules of Civil Procedure Rule 25(d), the Interim Commissioner at the time was automatically substituted in his place. Subsequent to that time, Governor DeSantis appointed Mr. Corcoran to the Florida Board of Governors on May 27, 2022, Mr. Corcoran is therefore made a party again by operation of Rule 25(d).

1

**INTRODUCTION**

This Court should enter an order prohibiting the deposition of Richard Corcoran. *See* Ex. A., Notice of Deposition of Defendant Richard Corcoran.[2] While Mr. Corcoran is technically a party to this lawsuit by virtue of his position as a member of the Board of Governors,[3] he possesses no unique information that is not available from other employees of the Florida Board of Education or the Florida Board of Governors, including the corporate representatives of both agencies. *See* Ex. B, Decl. of Richard Corcoran. Mr. Corcoran was not directly or personally involved with the passage or administration of the provisions of HB 233. Any relevant information Mr. Corcoran may possess is limited and readily available from sources other than a high-ranking government official. Specifically, the Board of Governors and the Board Education are producing multiple witnesses to testify about the survey-drafting process and other topics identified by Plaintiffs. *See e.g.*, Ex. C, Plaintiffs' Fourth Amended Notice of Deposition of Defendant Florida Board of Governors. Moreover, Defendants have produced tens of thousands of pages of documents related to the issues in this lawsuit, and none of those documents demonstrate Mr. Corcoran was personally and directly involved with the passage or administration of HB 233.

The apex doctrine precludes the deposition of Mr. Corcoran outright, because Plaintiffs cannot overcome the high burden that the apex doctrine imposes to prevent

the type of discovery they seek, especially from a party sitting at the highest levels of state government. Discovery directed at "an official at the highest level of . . . management creates a tremendous potential for abuse of harassment," and therefore a "stricter standard applies to the party seeking discovery." *Celorio v. Google Inc.*, 1:11-CV-79-SPM-GRJ, 2012 WL 12861605, at *1 (N.D. Fla. Nov. 19, 2012); *accord Harvard v. Dixon*, Case No. 4:19-cv-212-AW-MAF, ECF No. 400 (N.D. Fla. May 26, 2022) (granting protective order of state government apex official). Moreover, to the extent Plaintiffs seek testimony about HB 233, such testimony would implicate the deliberative-process privilege.

This Court enjoys broad discretion to limit discovery aimed at high-ranking officials that is ripe for abuse, including by precluding the deposition of Mr. Corcoran entirely. Through the conferral process, Counsel for Defendants have requested Plaintiffs provide any evidence indicating Mr. Corcoran was personally involved or would otherwise have unique relevant information that would not be available from other sources that would justify such an intrusive inquisition. As of

---

[2] Mr. Corcoran's deposition is presently scheduled for July 13, 2022. Counsel for Plaintiffs has agreed to reschedule the deposition pending the Court's resolution of this motion.

[3] Mr. Corcoran is also a former member and Speaker of the Florida House of Representatives; however, he did not serve in that body at the time HB 233 (2021) was passed.

3

the time of this filing, Plaintiffs had not produced any evidence supporting their demand.

## **FACTUAL BACKGROUND**

Plaintiffs sued the Florida Board of Governors, the Florida State Board of Education, and the Florida Education Commissioner alleging that HB 233 (2021) unconstitutionally infringes on the right to free speech guaranteed by the First Amendment to the U.S. Constitution. Plaintiffs seek injunctive relief permanently enjoining enforcement of certain provisions of that legislation, referred to as the Survey Provision, the Anti-Shielding Provision, and the Recording Provision. *See* ECF No. 101 ¶ 67.

Plaintiffs have pursued discovery from multiple parties and non-parties. Plaintiffs served deposition subpoenas on Debra Rohlinger, Professor and Associate Dean for Faculty Development and Community Engagement at Florida State University ("FSU"), and J. Alex Kelly, Deputy Chief of Staff to Governor Ron DeSantis. Plaintiffs have already deposed Dr. Tim Chapin and Lonna Atkeson from the FSU Institute of Politics, and Jon Rogers, Assistant Vice Chancellor at the Florida Board of Governors. Plaintiffs also served subpoenas duces tecum on non-parties Barbara Feingold, a Member of the Board of Trustees for Florida Atlantic University; the Executive Office of Governor Ron DeSantis; legislative entities including members of the Florida House of Representatives and the Florida Senate,

the Education and Employee Committee, the House Majority Office, the Office of the House Speaker, the Office of the Senate President, the Office of the Senate Secretary, the Senate Majority Office, the Senate Appropriations Committee; all universities within the State University System; and several colleges within the Florida College System. *See* ECF No. 118. Plaintiffs have also obtained well over 75,000 pages of documents from the Board of Governors and Board of Education during discovery, with supplemental productions forthcoming.

Plaintiffs now seek to depose Mr. Corcoran, a quintessential high-ranking government official, to obtain information they can easily get elsewhere. In his capacity as Commissioner, Mr. Corcoran served as the chief educational officer of the state of Florida and was responsible for giving full assistance to the State Board of Education in the administration and supervision of the Florida Department of Education. *See* Decl. of R. Corcoran, ¶ 3. In that role, he was also a member of the Florida Board of Governors. *Id.* Plaintiffs' belief that Mr. Corcoran has discoverable information is presumably based on cherry-picked public comments Mr. Corcoran has made about Florida's education system in his capacity as Commissioner of Education and a member of the Board of Governors. These comments alone fall far short of establishing the strict prerequisites necessary to depose an apex official, especially on topics that implicate the legislative and deliberative-process privileges.

In addition to offering Assistant Vice Chancellor Rogers in his individual capacity, the Board of Governors will offer Chancellor Marshal Criser and Eugene Kovacs, and the Board of Education will offer Chancellor Kathryn Hebda to testify in their capacities as the Rule 30(b)(6) representative witnesses for their respective entities. Thus, Chancellor Criser, Mr. Kovacs, and Chancellor Hebda can testify about the substance of any of the relevant issues. Anything that Plaintiffs seek to discover regarding the Board of Governors and the Board of Education, they can discover directly from these witnesses without subjecting Mr. Corcoran to compelled deposition.

Plaintiffs have not, and cannot, demonstrate that Mr. Corcoran, as Commissioner of the Florida Department of Education and a member of the Florida Board of Governors—possesses unique knowledge that cannot be gathered from less burdensome sources. Thus, this Court should grant this motion for protective order and prevent the deposition of Mr. Corcoran from proceeding.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 26(c), this Court has broad discretion to enter a protective order upon a showing of good cause to prevent a deposition that will subject a party to "annoyance, embarrassment, oppression, or undue burden or expense."

Although in normal circumstances the burden is on the party moving for a protective order to show good cause, a different rule applies to the depositions of apex officials like Mr. Corcoran. In the case of apex officials, Courts take the default position that such depositions are impermissible until the party seeking the deposition establishes otherwise. *See Harvard v. Dixon*, 4:19-cv-212-AW/MAF, (N.D. Fla. May 26, 2022), ECF No. 400 at 2 (citing *In Re U.S. (Kessler)*, 985 F.2d 510, 513 (11th Cir. 1993)).

As the Eleventh Circuit has explained, the reason for this exception is "the obvious practical implications of requiring high government officials to appear in judicial proceedings." *In re USA (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010); *see also League of Women Voters of Fla., Inc.*, No.: 4:21-CV-186-MW-MAF, 2021 WL 4962109, at *1 (N.D. Fla. Oct. 19, 2021) (citing *In re United States*, 985 F.2d at 512 (explaining that "[t]he reason for requiring exigency before allowing the testimony of high officials is obvious. High ranking government officials have greater duties and time constraints than other witnesses.")).

Once established that the proposed deponent is an apex official, the burden then shifts to the party seeking the deposition to show:

(1) deposing the official is necessary to obtain relevant, "first-hand" information;

(2) the information possessed by the official is important to the case;

(3) the deposition would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference; and

(4) the evidence sought is not reasonably available through less-burdensome means or alternative sources.

*Odom v. Roberts*, 337 F.R.D. 359, 364 (N.D. Fla. 2020).

Good cause exists to preclude Plaintiffs from taking Mr. Corcoran's deposition because Mr. Corcoran is entitled to unique protections as a high-ranking apex official, the only relevant information he possesses is readily discoverable from other sources, and any other testimony he might give regarding HB 233 would be protected by the legislative and deliberative-process privileges.

## LEGAL ARGUMENT

### I. Mr. Corcoran is an Apex Official.

Mr. Corcoran is an apex official by virtue of his position as the former Commissioner of the Florida Department of Education, and as a former and current member of the Board of Governors. In his capacity as Commissioner, he is the chief educational officer of the state of Florida. *See* Decl. of R. Corcoran, ¶ 3; *see also* § 1001.10(1), Fla. Stat. In that role, he also was responsible for giving full assistance to the State Board of Education in the administration and supervision of the Florida Department of Education. *Id.* As one member of the 17-member Board of Governors, Mr. Corcoran shared responsibility as a member of that corporate body that was designated to "operate, regulate, control, and be fully responsible for the

8

management of the whole university system." Art. IX, § 9, Fla. Const.; *see also* § 1001.705(2), Fla. Stat. Much, if not most, of the relevant information Mr. Corcoran has regarding the issues in this case is protected from disclosure by the deliberative process privilege.

Based on his current and former roles in high-level government positions, Mr. Corcoran is precisely the type of individual the apex doctrine was meant to protect. *Cf. Kessler*, 985 F.2d at 511-12 (finding that deponent was an apex official because he "is the head of an important executive agency charged with ensuring the health and safety of the public"). Although there is no hard and fast rule for determining which government employees qualify as apex officials, Mr. Corcoran, as the "chief education officer" in Florida and a member of the governing body for the entire state university system is "a sufficiently high-ranking official to warrant protection." *Odom v. Roberts*, 337 F.R.D. 359, 364 (N.D. Fla. 2020) ("The federal courts have not settled on a standard for determining whether a government official is sufficiently 'high-ranking' to warrant protection.").

In his current role, Mr. Corcoran is one member of a 17-member corporate body overseeing Florida's universities. In his former role as "chief education officer," he oversaw the Florida Department of Education with its annual budget of over $30 billion and a staff of over 2,200 employees tasked with overseeing more than 340,000 full-time educators and administrators throughout the state. *Cf. League*

9

*of Women Voters of Florida, Inc. v. Lee*, 4:21CV186-MW/MAF, 2021 WL 4962109, at *2 (N.D. Fla. Oct. 19, 2021) ("[C]ourts have found sheriffs, corporate general counsels, state secretaries of state, and city managers to be high-ranking officials." (collecting cases)).

Through these positions, Mr. Corcoran may have relevant information to nearly every lawsuit involving the Florida Department of Education (as well every bill and lawsuit pertaining to any of the other seven agencies he works with on a daily basis) including many high-profile cases currently pending before this and other state and federal courts. Finding that Mr. Corcoran is an apex official and affording him the protections from discovery appurtenant to that finding would be consistent with the rationale behind the apex doctrine—preventing the possibility "that 'high-ranking' officials could be burdened unduly if they were required to submit to a deposition in the multitude of civil actions that some government agencies and businesses face." *Odom*, 337 F.R.D. at 363.

The fact that Mr. Corcoran is no longer the Florida Education Commissioner does not change this analysis. If anything, his former role doubles the justification for applying the apex doctrine to prevent him from Plaintiffs' intrusive prying and potential harassment. *See, e.g., Cruz v. Green*, No. 18-60995-CIV, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019) (applying apex doctrine to former sheriff); *Palmisano v. Paragon 28, Inc.*, 2021 WL 1686948, at *3 (S.D. Fla. Apr. 7, 2021)

(finding former CEO's "deposition . . . is subject to the apex doctrine"); *Plaintiff 1 v. Washington County School Board*, No. 5:07-CV-194-RS-EMT, 2008 WL 11462924, at *3 (N.D. Fla. February 15, 2008) (applying apex doctrine to DJJ Secretary/former FDC Secretary). Mr. Corcoran is still involved in some of the same education initiatives in his current role as a member of the Board of Governors and faces the same (and arguably greater) threat of being inundated with deposition notices for a multitude of mundane matters from litigants who have not "done their homework" by seeking discovery through less burdensome means or alternative sources. *Cf. Jackson*, 624 F.3d at 1372 ("In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony.").

As the Eleventh Circuit noted, the "appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers." *Jackson*, 624 F.3d at 1372. The separation of powers implications are heightened in situations where litigants seek to depose former agency heads who also have relevant information due to their close interactions with the Governor.

This Court should find that Mr. Corcoran is an apex official. Plaintiffs cannot "show that []he has 'first-hand' information that is important to this case, that the deposition will not interfere with [his] duties, and that the evidence [Plaintiffs] seek is not accessible through other, less-burdensome means," and thus cannot take his

11

deposition. *League of Women Voters of Fla., Inc. v. Lee*, 4:21CV186-MW/MAF, 2021 WL 4962109, at *3 (N.D. Fla. Oct. 19, 2021).

**II.   Plaintiffs cannot make the extraordinary showing necessary to justify the deposition of an apex official.**

Once an official shows he or she is "high-ranking," the party seeking the apex deposition must show that: "(1) deposing the official is necessary to obtain relevant, 'first-hand' information; (2) the information possessed by the official is important to the case; (3) the deposition would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference; and (4) the evidence sought is not reasonably available through less-burdensome means or alternative sources." *Odom*, 337 F.R.D. at 365.

It is not enough to show merely that Mr. Corcoran has relevant information.[4] Rather, Plaintiffs must make "a showing beyond mere relevance" before they can take these depositions. *League of Women Voters*, 2021 WL 4962109, at *1. If mere relevance were the standard, agency heads would be subject to deposition anytime a lawsuit is filed regarding an agency's policy or practice. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). That is not the case.

---

[4] Defendants acknowledge that Mr. Corcoran possesses some knowledge relevant to this case; however, the same information can be obtained through less burdensome means or alternative sources—namely, from the designated corporate representatives or through written discovery. Moreover, Mr. Corcoran was not personally and directly involved with the passage or administration of HB 233.

12

In *Morgan*, the Court stated that in an effort to preserve the integrity of the administrative process, the Secretary of Labor should not have been asked to testify. *Id.* The D.C. Circuit relied on *Morgan* for its holding that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Secy. of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985).

In *Kessler*, 985 F.2d at 512, the Eleventh Circuit agreed with this general rule and held that the Commissioner of the U.S. Food and Drug Administration (FDA) was a high-ranking government official who could not be called to testify about the reasons for taking official action absent a showing of extraordinary circumstances. *See also In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (agreeing with the holding in Simplex and cautioning the district court to "remain mindful of the fact that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.").

Here, no extraordinary circumstances exist to support Plaintiffs' deposition of Mr. Corcoran; knowledge and involvement in policy decisions is not enough. *See Morgan*, 313 U.S. at 422.  Even assuming Mr. Corcoran had some limited participation in the passage or the administration of HB 233 that could generate relevant information, Plaintiffs cannot show that they need to depose Mr. Corcoran to obtain these facts. Plaintiffs cannot show, as they must, that the information they

13

seek to obtain through Mr. Corcoran's deposition cannot be obtained through less burdensome means or alternative sources. *Cf. Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated. However, even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information." (citations omitted)).

Plaintiffs do not need to depose Mr. Corcoran because they can obtain the same facts by deposing the Board of Governors' and the Board of Education's corporate representatives. Nor can Plaintiffs show that they could not obtain the same information they seek to obtain from Mr. Corcoran through different means, like interrogatories or depositions by written question. *See Harvard*, No. 4:19-cv-212-AW/MAF (N.D. Fla., May 26, 2022), ECF No. 400 at 5 (granting motion for protective order where "plaintiffs did not show they could not obtain the information using other discovery tools. They did not show, for example, that interrogatories or depositions by written question could not suffice."). Indeed, Plaintiffs have already served interrogatories on Mr. Corcoran in his capacity as Commissioner. *See* Joint Status Report, ECF no. 118, ¶ 3.

### III. Mr. Corcoran's Testimony is Protected by the Deliberative Process Privilege.

Plaintiffs brought this suit under § 1983 challenging HB 233 on First Amendment grounds. In such cases legislators and executive branch officials acting

in a legislative capacity enjoy absolute immunity from both suit and discovery. *See Bogan v. Scott-Harris,* 523 U.S. 44, 49 (1998) ("[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activity."); *see also In re Hubbard,* 803 F.3d 1298 (11th Cir. 2015) (quashing subpoenas directed to the Governor of Alabama, the former governor, the President Pro Tempore of the Alabama Senate, and the Speaker of the Alabama House of Representatives).

The deliberative process privilege "protects the internal decision making processes of the executive branch in order to safeguard the quality of agency decisions." *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1479, 1490 (11th Cir. 1992), *abrogated on unrelated grounds*, *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 170 (1993). The Commissioner of Education and Members of Board of Governors cannot be compelled to provide testimony relating to their deliberative process, which includes discussions about pending legislation, whether or not to advocate for the passage of that legislation, and whether or not to sign that legislation into law after it passes. *In re Hubbard*, 803 F.3d at 1310 (holding that the Alabama governor, former governor, state senate president pro tempore, and speaker of the state house "each unquestionably hold their own legislative privilege.").

Here, the deliberative process privilege protects the Commissioner of the Florida Department of Education and members of the Board of Governors from the

15

burden of sitting for depositions and the risk of having their privileged communications revealed through that deposition. Plaintiffs likely seek to discover communications discussing then-pending legislation—communications that took place between legislators, executive agency officials, and members of Governor DeSantis's executive staff. *Cf. Gravel v. United States,* 408 U.S. 606, 625 (1972) (the privilege protects matters that are "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation.").

The Northern District of Florida recognized nearly a decade ago that, as a matter of federal common law, the deliberative process privilege may be asserted in order to avoid becoming entangled in litigation between third parties—as in this case. *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) (Hinkle, J., holding there is "federal legislative privilege—at least qualified, if not absolute— not to testify in [a] civil case about the reasons for their votes"). The same rationale extends to the Executive Branch and applies here, where members of executive agencies are interacting with the legislative process or performing in their own quasi-legislative capacity. *League of Women Voters of Florida, Inc. v. Lee*, 340 F.R.D. 446, 455 (N.D. Fla. 2021) ("[T]his Court concludes that most of the testimony Plaintiffs seek from the Governor's office . . . is subject to the legislative

16

privilege."). Defendants respectfully requests that this Court find that Mr. Corcoran is entitled to assert the deliberative process privilege.

### **RELIEF REQUESTED**

The Court is authorized to grant wide ranging relief "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Rule 26(c) explicitly authorizes the Court to enter an order:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

. . .
(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Accordingly Defendants respectfully request an Order from this Court prohibiting Plaintiffs from deposing Mr. Corcoran for the reasons described above, including (i) the apex doctrine and the deliberative-process privilege; and (ii) Plaintiffs' inability to establish the necessary prerequisites for deposing an apex

17

official, and their ability to seek relevant information through alternative methods of discovery.

Respectfully submitted on July 1, 2022.

> /s/ *George T. Levesque*
> George T. Levesque (FBN 555541)
> James Timothy Moore, Jr. (FBN 70023)
> Ashley H. Lukis (FBN 106391)
> Patrick M. Hagen (FBN 1010241)
> GRAYROBINSON, P.A.
> 301 South Bronough Street, Suite 600
> Tallahassee, Florida 32301
> Telephone: 850-577-9090
> Facsimile: 850-577-3311
> George.Levesque@gray-robinson.com
> Tim.Moore@gray-robinson.com
> Ashley.Lukis@gray-robinson.com
> Patrick.Hagen@gray-robinson.com
> *Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), the undersigned certifies that counsel for the Defendants conferred in good faith with counsel for Plaintiffs regarding the relief requested on June 7, 27 and 29, 2022, but the parties were unable to reach resolution.

                                            */s/ George T. Levesque*
                                            George T. Levesque (FBN 555541)
                                            GRAYROBINSON, P.A.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned certifies that this Motion contains 3,828 words.

                                            */s/ George T. Levesque*
                                            George T. Levesque (FBN 555541)
                                            GRAYROBINSON, P.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 1, 2022, the foregoing document has been served by the Court's CM/ECF system which will serve a copy via email on all counsel of record.

                                            */s/ George T. Levesque*
                                            George T. Levesque (FBN 555541)
                                            GRAYROBINSON, P.A.