UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM A. LINK, et al.,

    Plaintiffs,

     v.

MANNY DIAZ, JR., in his official capacity
as the Florida Commissioner of Education,
et al.,

    Defendants.

Case No. 4:21-cv-00271-MW-MAF

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR PROTECTIVE ORDER AS TO THE DEPOSITION OF
<u>RICHARD CORCORAN</u>**

Defendants seek an order from this Court under Rule 26(c) prohibiting the deposition of Defendant Richard Corcoran, the former Florida Commissioner of Education and a current member of the Florida Board of Governors. Defs.' Mot. for Protective Order ("Mot."), ECF No. 122. In both roles, Mr. Corcoran was and is a party-opponent in this case. Rather than ground their motion in controlling law or facts in support, Defendants rely on the same semantic tactics they have employed since the beginning of this litigation to attempt to avoid complying with reasonable and relevant discovery requests. Throughout the discovery process, Defendants have delayed and contested Plaintiffs' access to discoverable information and have

1

obscured the nature of the discovery that has been produced. Defendants' latest motion continues this unfortunate pattern.

Defendants advance two grounds for refusing Plaintiffs the opportunity to depose Mr. Corcoran in this case. In support of their apex doctrine claim, Defendants put forth what appears to be a strategically narrow assertion that "Mr. Corcoran was not personally and directly involved with the passage or administration of HB 233." Mot. at 12 n.4; *see also* Decl. of Richard Corcoran ("Corcoran Decl.") ¶¶ 8-11, ECF No. 122-2. But in support of their legislative and deliberative process privilege claim, Defendants offer the incompatible position that Mr. Corcoran may have been involved in "communications that took place between legislators, executive agency officials, and members of Governor DeSantis's executive staff" regarding "then-pending" HB 233. Mot. at 16. This inherent contradiction is representative of the obfuscation that has unfortunately become typical in Defendants' approach to discovery in this case. And, indeed, Defendants carefully stop short of stating that these "privileged" communications actually took place. Instead, they appear to ask the Court to assess legislative and deliberative process privilege as a theoretical matter so that Defendants can maintain a tactical double-speak.

The Court should reject Defendants' arguments and deny the motion for a protective order. First, Mr. Corcoran is not an apex official, and even if he were treated as such, his deposition is necessary to this litigation—as demonstrated by

Mr. Corcoran's own public conduct and statements, as well as documents that Defendants produced mere days before they filed this motion, which indicate that Mr. Corcoran has in fact been personally involved with HB 233, and at the very least has unique personal knowledge relevant to this case. Second, Defendants fail to carry their burden to establish that Mr. Corcoran's deposition testimony must be withheld pursuant to legislative or deliberative process privilege. The extraordinary remedy of prohibiting the deposition of a party-opponent should be denied.

## BACKGROUND

As the Court has already recognized, Plaintiffs' allegations in this case "frame[] the challenged provisions of HB 233 as part of a broader effort to 'target and chill certain viewpoints with which [the law's] proponents disagree.'" Order Granting in Part and Denying in Part Mot. for Protective Order at 3-4, ECF No. 126 (quoting Pls.' Second Am. Compl. ¶ 6, ECF No. 101). "[I]nvestigating 'extratextual evidence'" is "essential" to the discovery of evidence relevant to Plaintiffs' claims, *id.* at 4, including evidence relating to "the law's historical background," "'the specific sequence of events leading up' to the law's passage," and "contemporary statements" of key figures, Order Granting Mot. to Compel at 3-4, ECF No. 102 (quoting *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021)). Mr. Corcoran was the chief education official at the time of the drafting, passage, and enactment of HB 233—which he personally

3

championed at the bill signing, and for which he personally filed a lobbyist disclosure form.[1]

Plaintiffs initially sought discovery from Defendants, including then-Commissioner Corcoran, through less intrusive means. In September of 2021, Plaintiffs served Interrogatories and Requests for Production on Mr. Corcoran. *See* Decl. of Frederick S. Wermuth ("Wermuth Decl.") ¶ 2.[2] In October of 2021, Mr. Corcoran provided bare bones interrogatory responses. *See* Wermuth Decl., Ex. B. In response to most interrogatories, Mr. Corcoran adopted the responses and objections of the other Defendants. And for nearly half of Plaintiffs' interrogatories, Mr. Corcoran's adoption of the other Defendants' responses constituted the entirety of his response. *See id.*, Resps. to Interrog. Nos. 3, 5, 7, 9, 10, 11, 14.

At the same time, Defendants' production of documents in this case has been troublingly slow—as of this filing, Defendants are still producing documents responsive to discovery issued by Plaintiffs in September 2021. *See* Wermuth Decl. ¶ 2. This does not appear to be because of the ongoing nature of the activities at issue in this case: many of the materials in recent productions are dated from well over a

---

[1] *See* "Gov. Ron DeSantis is Speaking at Cape Coral High School," available at: https://livestream.com/accounts/6142119/events/8091964/videos/222649035; Lobbyist Disclosure & Information, Florida House of Representatives, HB 233 (2021), available at: https://www.myfloridahouse.gov/LD/default.aspx?bn=0233&lyi=8&search=1#search.

[2] The Declaration of Frederick S. Wermuth is attached hereto as **Ex. 1**.

year ago. *Id.* ¶ 3. Despite having served Requests for Production over eight months prior, Plaintiffs did not receive *any* production identified as being from the "Board of Education" until May 20, 2022. *See id.* ¶ 5 and Ex. C.[3] Even then, that production was remarkably small, consisting of only 32 documents spanning a total of 182 pages. Wermuth Decl. ¶ 5. On June 1, Plaintiffs received a second production from the "Board of Education," which consisted of 256 documents spanning 827 pages. *Id.* ¶ 6. On Monday, June 27—only four days before Defendants filed this motion for a protective order—Plaintiffs received a third production from the "Board of Education" consisting of 3,015 documents spanning 39,736 pages. *Id.* ¶ 7. Three days later, on the eve of this motion, Plaintiffs received a fourth production from the "Board of Education" consisting of 1,172 documents spanning 4,889 pages. *Id.* ¶ 8. To put these productions in perspective, of the 45,073 pages of documents produced by Defendants that *may* include Mr. Corcoran's documents, 99% of them were produced in the four days before Defendants filed the instant motion for a protective order.

Defendants attempt to paint a different picture by broadly asserting that

---

[3] Defendants have characterized all of their productions as being on behalf of either the Board of Governors or the Board of Education and have represented that their effort to collect and produce documents from Mr. Corcoran has been included as part of discovery from the Board of Education. Wermuth Decl. ¶ 4. If documents have specifically been collected from Mr. Corcoran and produced, they have not been further identified or stamped as such by Defendants.

Plaintiffs received "over 75,000 pages of documents" prior to Defendants' July 1 motion for a protective order. Mot. at 5. This accurately reflects the number of pages that Defendants had produced prior to this motion regarding *all* Defendant parties—the Board of Governors, the Board of Education (and, per Defendants, under that umbrella as well, Mr. Corcoran) combined. And Defendants also neglect to mention that *more than half* of those 75,000 pages were produced *mere days* before Defendants filed their motion. In the two weeks since, Defendants have also produced an additional 24,000 pages. *See* Wermuth Decl. ¶ 9. And, in communications yesterday, Defendants' counsel confirmed that more productions from the Board of Governors and potentially the Board of Education are anticipated later this week. *See id.* ¶ 2. Plaintiffs have asked that Defendants advise approximately how large those additional productions are anticipated to be, but as of this filing, they have not yet received an answer. *Id.*

Though review of these documents is still ongoing, Plaintiffs have already found materials indicating that Mr. Corcoran's involvement was more than that of a disinterested administrator, and not nearly as limited as Defendants imply. These include communications that show that Mr. Corcoran's deputy chief of staff provided revisions to amendments to the bill when it was before the legislature and closely coordinated with the Governor's office regarding talking points for HB 233 and responses to press inquiries. *See* Wermuth Decl., Exs. A, H, I, J, K, and L. There

is also evidence specifically related to Mr. Corcoran's involvement in other viewpoint-based rules that the Court recently confirmed are relevant to Plaintiffs' theory of the case. Wermuth Decl., Ex. L. And documents obtained by Plaintiffs from other sources (but inexplicably not included in the productions from Defendants) show that Mr. Corcoran personally was among those whom Chancellor Criser affirmatively included in communications with institutions about the implementation of the survey. Wermuth Decl., Ex. E. Given the volume of Defendants' most recent production, Plaintiffs are still reviewing it and do not yet know if there are additional documents relevant to this dispute within its tens of thousands of pages.

On the same day Defendants filed this motion, Defendants also provided a supplemental privilege log. *See* Wermuth Decl., Ex. D. The log did not contain any documents listing Mr. Corcoran as custodian, nor did it include any privilege claims invoking legislative privilege or deliberative process privilege. *Id.* Similarly, the documents Defendants have produced include conspicuously few documents that bear the indicia of being from Mr. Corcoran's custodial records. Plaintiffs have identified fewer than 100 documents from the "Board of Education" that include Mr. Corcoran as a participant in the communication—many of which are duplicates. Moreover, most of these documents have many recipients and could have been collected from other custodians.

As indicated above, *Plaintiffs* have produced relevant documents in this case that should be part of Mr. Corcoran's records. In an echo of Plaintiffs' earlier motion to compel, Plaintiffs received documents from non-parties through public records requests which (1) would be in the possession of Mr. Corcoran, and (2) would have hit on search terms that Defendants claim to have run. *See, e.g.*, Wermuth Decl., Exs. E, F. These documents were produced *by* Plaintiffs *to* Defendants on May 20, 2022. *See* Wermuth Decl. ¶ 10. As of today, Plaintiffs have been unable to identify a document like Exhibit E in Defendants' productions to-date.

Accompanying the present motion, Defendants filed a declaration from Mr. Corcoran which includes the statements: "I was not personally involved in the drafting or passage of HB 233," and "I have not been personally involved with the administration of HB 233." Corcoran Decl. ¶¶ 8, 9. The declaration does not explain what Mr. Corcoran means by "personally involved in," nor does it explain what is meant by "the drafting or passage of HB 233" or "the administration of HB 233." The only guidance Plaintiffs have to interpret the meaning of Mr. Corcoran's declaration is correspondence from Defendants' counsel prior to the motion wherein it was represented that Mr. Corcoran "certainly was not involved with the passage of the bill since he was not in the legislature." Wermuth Decl., Ex. G. Given Mr. Corcoran's public activity regarding HB 233, and other evidence that will be discussed herein, it appears that this declaration may be artfully worded to simply

confirm that Mr. Corcoran was not a duly elected member of the Florida Legislature in 2021, or that he does not personally "administer," e.g., HB 233's survey. But these self-evident facts are not sufficient to justify prohibiting Plaintiffs from taking his deposition in this case.

## ARGUMENT

As this Court noted previously in this litigation, "[p]arties may discover 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" Order Granting Mot. to Compel at 3, ECF No. 102 (quoting Fed. R. Civ. P. 26(b)(1)). "Relevance in the context of discovery has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (citations and quotation marks omitted). A party seeking to avoid discovery by moving for a protective order bears the burden of demonstrating that "good cause" exists to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The movant must "make a specific demonstration of facts in support of the request" showing that there is "good cause" for the order. *E.E.O.C. v. Doherty Grp., Inc.*, No. 14-CV-81184, 2016 WL 6583786, at *2 (S.D. Fla. Sept. 14, 2016) (quoting *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008)). "This burden requires a particular and specific demonstration of fact; conclusory

statements are not sufficient." *Beaulieu v. Bd. of Trustees of Univ. of W. Fla.*, No. 3:07CV30/RV/EMT, 2007 WL 9734885, at *2 (N.D. Fla. July 18, 2007).

The right to take depositions is particularly "broad" because depositions are considered "such an important tool of discovery." *Odom v. Roberts*, 337 F.R.D. 359, 362–63 (N.D. Fla. 2020). The remedy of "prohibit[ing] the taking of a deposition altogether" is particularly extreme and is only justified in "extraordinary circumstances." *Cruz v. Green*, No. 18-60995-CIV, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019). Mr. Corcoran is a patently relevant witness and Defendants have failed to satisfy the high burden necessary to preclude his deposition.

## I. Mr. Corcoran's deposition is not barred by the apex doctrine.

### A. Mr. Corcoran is not an apex official.

In order to invoke the apex doctrine, Defendants bear the burden of "establishing that [Mr. Corcoran] indeed is a 'high-ranking' government official." *Odom*, 337 F.R.D. at 364 (quoting *Est. of Levingston v. Cnty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017)). Currently, Mr. Corcoran's only official role is as a member of the Board of Governors. Defendants' bare bones statement that "Mr. Corcoran is still involved in some of the same education initiatives," Mot. at 11, falls far below the burden to show "particular and specific facts" in support of their motion.

Mr. Corcoran's invocation of the apex doctrine should be assessed based on

his current role.[4] The purpose of the privilege is to avoid "the time consumed by depositions" which could no longer "be devoted to important governmental responsibilities." *Odom*, 337 F.R.D. at 363. Depositions are time consuming for any witness, but the privilege can only be invoked by high-ranking government officials because they have "greater duties and time constraints than other witnesses." *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). Any burden from deposing Mr. Corcoran would only affect his *current* duties—which are minimal.

Serving as a member of the Board of Governors does not come close to qualifying as a high-ranking official. Unlike quintessential high-ranking officials— like mayors, sheriffs, governors, vice presidents, and agency heads—serving on the Board of Governors is not a full-time job. Multiple members of the board are CEOs

---

[4] Although Defendants cite cases for the proposition that the apex doctrine applies to former officials, the Eleventh Circuit has not weighed in on that issue. Moreover, there is no consensus among the courts that have. *See Van Den Eng v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 n.3 (D. Kan. Oct. 21, 2005) (finding deponent's status as former employee "militat[ed] against the application of the Apex doctrine"); *see also City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *4 (N.D. Ill. Apr. 6, 2020) (denying motion for protective order where Defendant "does not rely on [former executive's] current employment status or responsibilities to claim that a deposition would impose an undue hardship"); *Robertson v. McNeil-PPC Inc.*, No. LACV1109050JAKSSX, 2014 WL 12576817, at *17 (C.D. Cal. Jan. 13, 2014) (finding apex doctrine applies to former official in part because "she *currently* maintains other significant, corporate responsibilities") (emphasis added); *but see* Mot. at 10-11 (collecting cases applying apex doctrine to former officials). Given the purpose of the doctrine, the approach that focuses on the deponent's current employment is more sound.

of private companies, and the Commissioner of Education is also always a member. Moreover, Defendants have merely alleged that Mr. Corcoran remains "involved" in only "some" of the education initiatives he oversaw as Commissioner. Mot. at 11. The same could be said for every "lower level employee[]" that the apex doctrine instructs parties to direct their discovery toward. *Celorio v. Google Inc.*, No. 1:11-CV-79-SPM-GRJ, 2012 WL 12861605, at *1 (N.D. Fla. Nov. 19, 2012). Even if the responsibilities of the Board of Governors—as a whole—could be considered important governmental functions, the apex doctrine does not attach to individual members of larger institutions. *See, e.g.*, *In re Subpoena Ad Testificandum Issued to Representative Ted Yoho*, No. 1:16-CV-188-MW/GRJ, 2016 WL 3149728, at *3–4 (N.D. Fla. June 3, 2016) (Walker, J.) (rejecting attempt to apply apex doctrine to member of U.S. House of Representatives).

## B. The deposition of Mr. Corcoran is necessary to obtain relevant information.

Even if the Court determines that Mr. Corcoran can invoke the apex doctrine based on his prior title, the motion should be denied because his deposition is necessary to obtain relevant information. "In determining whether to allow an apex deposition courts consider: (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees." *Celorio*, 2012 WL

12861605, at *1. Importantly, Plaintiffs need not have completely exhausted other avenues for discovery; instead, the court should consider the diligent efforts taken to-date in exercising its discretion. *See Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686948, at *4 (S.D. Fla. Apr. 7, 2021), *reconsideration denied*, No. 21-60447-CIV, 2021 WL 1686928 (S.D. Fla. Apr. 23, 2021).

Even in the face of Defendants' obstruction, there is sufficient reason to believe that Mr. Corcoran has first-hand, non-repetitive knowledge of facts at issue in this case. Plaintiffs' Second Amended Complaint expressly identifies directly relevant statements made by Mr. Corcoran, including: "Our weapon is education" and "It's working in the universities . . . I've censored or fired or terminated numerous teachers . . . [for] indoctrinat[ing] students." Pls.' Second Am. Compl. ¶ 6, ECF No. 101. Mr. Corcoran personally attended the press conference and bill signing for HB 233, where he praised the DeSantis administration's approach to education and expressly identified "indoctrination" as something "we've dealt with very harshly."[5] Considering those facts alone, Plaintiffs are already entitled to seek discovery regarding Mr. Corcoran's *own* statements—even if the apex doctrine applies. *See, e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 695–96 (N.D. Ga. 2019) (permitting deposition of Georgia Secretary of State concerning his public statements).

---

[5] "Gov. Ron DeSantis is Speaking at Cape Coral High School," *supra* note 2.

13

The declaration from Mr. Corcoran is unilluminating and ultimately irrelevant. It consists of artificially narrow statements that Mr. Corcoran was not "personally involved" in a handful of areas. Not only is the phrase "personally involved" conspicuously undefined, as discussed above, it also does not pertain to the relevant issue: whether Mr. Corcoran has personal *knowledge*. *See, e.g.*, *Brown v. Branch Banking & Tr. Co.*, No. 13-81192-CIV, 2014 WL 235455, at *3 (S.D. Fla. Jan. 22, 2014). Whether Mr. Corcoran considers his involvement "personal" or "direct" is irrelevant—if he has unique personal knowledge of discoverable facts, then he is properly subject to a deposition.

Documents that have been produced by Defendants involving Mr. Corcoran's chief of staff illustrate Mr. Corcoran's coordination with the Governor's office during the legislative process and leading up to the enactment of HB 233. *See* Wermuth Decl., Ex. A. These documents show intimate involvement of Mr. Corcoran's office at the outset of the legislative process—suggesting amendments to HB 233 and appearing for legislative hearings. *See* Wermuth Decl., Exs. H, J. Other documents show express coordination on messaging around HB 233 and responses to press inquiries. *See* Wermuth Decl., Exs. I, K, L. Documents in the public record that Plaintiffs received from non-parties provide further support of Mr. Corcoran's involvement and, at least, knowledge. Wermuth Decl., Ex. E. Indeed,

Mr. Corcoran himself filed lobbying disclosures with regard to HB 233.[6] This alone belies Defendants' claim that Mr. Corcoran was not personally involved in the legislative process and certainly supports a finding that there are sufficient indicia that he had personal knowledge about the bill and the process. Mr. Corcoran's involvement also includes implementing and addressing press inquiries regarding the administrative rule banning Critical Race Theory in classrooms, *see* Wermuth Decl., Ex. L, which this Court has already recognized is a relevant development leading up to the enactment of HB 233. *See* Order Granting in Part and Denying in Part Mot. for Protective Order at 4, ECF No. 126.

Mr. Corcoran's deposition is also appropriate because Plaintiffs have already undertaken reasonable efforts to exhaust other avenues of discovery. Plaintiffs submitted interrogatories and requests for documents to Mr. Corcoran—both of which returned minimal responses that were not even signed by Mr. Corcoran himself. *See* Wermuth Decl., Ex. B. And without even attempting to make a colorable privilege claim as required under Rule 26(b)(5), Defendants' motion suggests they will not be providing further information from Mr. Corcoran based on

---

[6] *See* Lobbyist Disclosure & Information, Florida House of Representatives, HB 233 (2021), *supra* note 2; Fla. Stat. § 11.061(1) (requiring registration as lobbyist of state officials who "seek[] to encourage the passage, defeat, or modification of any legislation by personal appearance or attendance before the House of Representatives or the Senate, or any committee thereof").

the legislative or deliberative process privilege. Mot. at 14-17. Like many of Defendants' positions throughout this litigation, this assertion contradicts their own arguments. *See infra*. It also underscores that, given Defendants' approach to discovery in this case, Plaintiffs' only means of obtaining further information about Mr. Corcoran's involvement in and knowledge of issues in the case is to depose him themselves.

## II.   Mr. Corcoran's testimony is not protected by the legislative or deliberative process privilege.

Defendants' invocation of the legislative and deliberative process privileges is rife with shortcomings. As an initial matter, although "federal courts have the authority and duty to recognize claims of privilege that are valid under federal common law," *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015) (citing Fed. R. Evid. 501), the party asserting a privilege bears the burden to show that the privilege applies, *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987). Here, Defendants do not even "expressly make the claim" of any privilege, let alone "describe the nature of the documents, communications, or tangible things . . . in a manner that . . . will enable other parties to assess the claim"—both of which are required under Rule 26(5)(A). That omission alone is fatal to Defendants' assertion of the privilege.

What's more, Defendants' blanket assertions of privilege are premature. *See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*,

164 F.R.D. 257, 260 (N.D. Fla. 1995) ("It is well settled that a witness whose testimony is subpoenaed cannot simply refuse to appear altogether on grounds of privilege, but rather must appear, testify, and invoke the privilege in response to particular questions.") (quoting *In the Matter of Certain Compls. Under Investigation by an Investigating Comm. of the Jud. Council of the Eleventh Circuit*, 783 F.2d 1488, 1518 (11th Cir.), *cert. denied sub nom. Hastings v. Godbold*, 477 U.S. 904 (1986)); *see also United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) (explaining that an attorney must "normally raise the privilege as to each record sought and each question asked"). It cannot be the case that every possible question Plaintiffs could ask of Mr. Corcoran would seek privileged information; after all, Mr. Corcoran did not once raise the legislative or deliberative process privilege in his responses to Plaintiffs' interrogatories. *See* Wermuth Decl., Ex. B. Accordingly, Defendants' "speculation that [Plaintiffs] will seek information protected by the deliberative process [or legislative] privilege is no basis for blocking" a deposition. *Brush v. Sears Holdings Corp.*, No. 09-81290-CIV-RYSKAMP/VITUNAC, 2010 WL 11558010, at *2 (S.D. Fla. Sept. 2, 2010).[7]

In any event, Defendants' arguments as to each baldly asserted privilege are

---

[7] The case that Defendants cite to suggest the opposite finds only that "legislators have a federal legislative privilege—at least qualified, if not absolute—not to testify in *this* civil case about the reasons for their votes." *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) (emphasis added).

not well founded. In asserting legislative privilege, Defendants make no effort to explain how Mr. Corcoran was *both* "not directly or personally involved with the passage or administration of the provisions of HB 233," Mot. at 2, and yet took "actions in the proposal, formulation, and passage of legislation" that are required for the legislative privilege to apply, *Hubbard*, 803 F.3d at 1308; *see also Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) ("[Executive official's] actions were legislative because they were integral steps in the legislative process."). Relatedly, courts typically recognize legislative privilege for only those executive branch officials involved in signing legislation into law. *See, e.g.*, *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 (N.D. Fla. 2021) ("The Eleventh Circuit has defined the privilege as covering 'both governors' and legislators' actions in the proposal, formulation, and passage of legislation.'") (quoting *Hubbard*, 803 F.3d at 1308). To the extent Mr. Corcoran is invoking the legislative privilege as a third-party lobbyist for HB 233, he does not have standing to do so. *Id.* at 454 n.2 ("[T]he [legislative] privilege would not prevent Plaintiffs from asking the third parties with which the Legislators communicated . . . ."); *see also Gilby v. Hughes*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (explaining that executive branch officials do not have standing to assert legislative privilege on behalf of a legislator or staff member).

Even setting aside whether the legislative privilege applies to Mr. Corcoran's actions, Defendants conflate immunity for civil liability with an evidentiary

privilege under Federal Rule of Evidence 501. Mot. at 14-15 (describing "absolute immunity from both suit and discovery"). The Supreme Court, however, made clear in *United States v. Gillock*, 445 U.S. 360 (1980), that absolute immunity from civil suits does not translate into an evidentiary privilege for state legislators in federal court, denying a state legislator's invocations of legislative privilege in a federal criminal case. *Id.* at 366; *see also Hubbard*, 803 F.3d at 1311; *Lee*, 340 F.R.D. at 455.

To the extent this Court were to analyze whether the privilege must give way to Plaintiffs' need for the evidence they seek in this case, all of the relevant factors weigh in Plaintiffs' favor. *See id.* (listing factors). First, Plaintiffs seek testimony from Mr. Corcoran that is relevant to their claims, including about "the specific sequence of events leading up to the law's passage" and his "contemporary statements" as a key figure. Order Granting Mot. to Compel at 3-4, ECF No. 102 (quotation omitted). Second, there is little availability of other evidence, *see supra* 3-5. Third, this litigation is serious—it "seek[s] to vindicate public rights [and] [i]n this respect, [is] akin to [a] criminal prosecution[]." *Lee*, 340 F.R.D. at 457. Fourth, not just the government, but the deponent himself, is involved in this litigation as a defendant member of the Board of Governors. Fifth, although the legislative privilege's purpose is critical, its application to the actions of a non-legislator who was not directly involved in the legislative process, by his own account, is weak at

best. Because all five factors weigh in Plaintiffs' favor, the qualified legislative privilege—if it applies at all—should yield in this instance.

Defendants' deliberative process privilege claim is similarly futile. The deliberative process privilege "protects the internal decision[-]making processes of the executive branch in order to safeguard the quality of agency decisions." *Nadler v. U.S. Dep't of Just.*, 955 F.2d 1479, 1490 (11th Cir. 1992), *abrogated on unrelated grounds*, *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 170 (1993). In the context of asserting the deliberative process privilege over documents, parties generally provide, in addition to a privilege log, "declarations from agency officials explaining 'what the documents are and how they relate to the [agency] decision.'" *Ascom Hasler Mailing Sys. v. USPS*, 267 F.R.D. 1, 4 (D.D.C. 2010) (alteration in original); *see also Nev. Partners Fund, LLC v. United States*, No. CIVA306CV379HTWMTP, 2008 WL 2484198, at *5 (S.D. Miss. May 12, 2008) (describing declarations of IRS officials submitted in support of a deliberative process privilege claims). Here, however, Defendants make zero effort to explain how Mr. Corcoran's potential testimony relates to any agency decision. According to Defendants' privilege log, they have not withheld *any* documents on the basis of the deliberative process privilege. And Mr. Corcoran's declaration, far from explaining what agency decisions his testimony may implicate, states that he was not and has not been "personally involved" in the drafting, passage, or administration

of HB 233, including the challenged provisions. *See* Corcoran Decl. ¶¶ 8-11, ECF No. 122-2.

Finally, it is worth noting that, "[m]any courts have found that the deliberative process privilege may not be asserted by government counsel," at least counsel outside the relevant agency. *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 135 (2006). Defendants' briefing contains no indication that anyone in Mr. Corcoran's office, rather than litigation counsel in this matter, made the decision to claim deliberative process privilege over his testimony. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009) (explaining "the deliberative process privilege may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted" or in some cases by another high-level official at the agency with delegated authority); *Nev. Partners Fund*, 2008 WL 2484198, at *5 ("[T]he head of the agency that has control over the requested document must assert the privilege, or in some circumstances, delegate the authority to assert the privilege.").

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for a protective order prohibiting the deposition of Richard Corcoran.

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

The undersigned, Frederick Wermuth, certifies that this motion contains 5028

words, excluding the case style and certifications.

Respectfully submitted this 12th day of July, 2022.

<div style="margin-left:40%">

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
Thomas A. Zehnder
Florida Bar No. 0063274
Robyn M. Kramer
Florida Bar No. 0118300
King, Blackwell, Zehnder
 & Wermuth, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
tzehnder@kbzwlaw.com
rkramer@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Alexi M. Velez*
Noah Baron*
Jyoti Jasrasaria*
William K. Hancock*
Raisa Cramer*
Elias Law Group LLP
10 G Street NE, Suite 600
Washington, DC 20002
Telephone: (202) 968-4490
melias@elias.law
efrost@elias.law
avelez@elias.law
nbaron@elias.law

</div>

jjasrasaria@elias.law
whancock@elias.law
rcramer@elias.law

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel in the Service List below.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111

*Counsel for Defendants*

## SERVICE LIST

George T. Levesque
James Timothy Moore, Jr.
Patrick M. Hagen
Ashley H. Lukis
GrayRobinson, P.A.
301 S. Bronough Street, Suite 600
Tallahassee, FL 32301
george.levesque@gray-robinson.com
tim.moore@gray-robinson.com
patrick.hagen@gray-robinson.com
ashley.lukis@gray-robinson.com

*Counsel for Defendants*