## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**WILLIAM A. LINK, et al.,**

       *Plaintiffs*,

v.                          **Case No.: 4:21cv271-MW/MAF**

**MANNY DIAZ JR., et al.,**

       *Defendants*.

_____/

## MOTION TO COMPEL DISCOVERY AND OVERRULE FIRST
## AMENDMENT PRIVILEGE OBJECTIONS

Defendants respectfully request an order from this Court overruling the First

Amendment privilege objections asserted by United Faculty of Florida ("UFF") and

March For Our Lives Action Fund ("MFOL") in the privilege log produced by

Plaintiffs, and compelling the production of documents in response to Defendants'

Requests for Production.[1]

---

[1] UFF's Response to Defendants' First Request for Production is attached as **Exhibit A**. MFOL's Response to Defendants' First Request for Production is attached as **Exhibit B**. Plaintiffs' Revised Privilege Log, first produced on or around May 4 and produced in revised form on or around June 30, 2022 in response to Defendants' First Request for Production is attached as **Exhibit C.** Plaintiffs' Supplemental Privilege Log served on July 15, 2022 is attached as **Exhibit D**.

# I.   SUMMARY OF DISPUTE

In response to Defendants' First Request for Production, Plaintiffs UFF and MFOL raised over one thousand First Amendment privilege objections, asserted boilerplate objections on various other grounds, incorporated improper general objections, and made partial productions "subject to" such objections. *See* Ex. A at 2–8; Ex. B at 2–8; *see generally* Exs. C, D. Plaintiffs also incorporated these responses and objections into their responses to Defendants' Third Request for Production. *See* Ex. E at 6–8; Ex. F at 6–8.

Plaintiffs have shut Defendants out of what appears to be every responsive internal record in UFF and MFOL's possession, and have likewise frustrated Defendants ability to determine whether Plaintiffs are withholding documents related to their alleged injuries, and thus related to their Article III standing. These alleged injuries include, for example:

- The chilling of "free exercise of speech and assembly on Florida's public campuses," and "intru[sion] upon the private views and associations of students and faculty," ECF No. 101¶ 5;

- Requiring Plaintiffs to "disclose their political associations and ideologies for the invidious purpose of cutting funding to Plaintiffs' colleges and universities on the basis of the political viewpoints of employees and students," *id.* ¶ 14;

- Compelling students and faculty to engage in speech with which they disagree, *id.*;

- Chilling UFF members' speech and free association by "creating an inhospitable environment," *id.* ¶ 24;

2

- Harming UFF's "mission" and causing UFF to "divert limited resources to combat the discriminatory and chilling effects" of HB 233, *id.* ¶ 25;

- "[C]hilling Florida's public university and college students who have joined the MFOL movement from freely speaking and associating on campus" through "threaten[ed] budget cuts to their institutions," *id.* ¶ 27; and

- Causing MFOL to "divert resources from on-campus to off-campus activities, forcing it to spend more money on less effective means of recruiting members." *Id.*

Defendants are entitled to discovery that will reveal the factual basis—or lack thereof—for each of these alleged harms. If Plaintiffs' asserted harms are not borne out by fact as opposed to conclusions and speculation, then not only must their claims fail, but they lack standing to pursue them.

To be sure, Defendants have never asked UFF or MFOL for private personal information about their members. Nor are Defendants targeting a disinterested third party with demands for irrelevant records.[2] Rather, having been accused of violating Plaintiffs' constitutional rights and hauled into court, Defendants served request for production aimed at probing the injuries that UFF and MFOL allege. In response to

---

[2] Of course, by including records on a privilege log, Plaintiffs concede that the documents are relevant, responsive, and "otherwise discoverable." Fed. R. Civ. P. 26(b)(5); *see also Oceana, Inc. v. Ross*, 920 F. 3d 855, 865 (D.C. Cir. 2019) (recognizing that only withheld documents that are "otherwise discoverable" must be identified on a privilege log, and thus irrelevant records need not be logged since they are not discoverable); *Sierra Club v. U.S. Fish & Wildlife Serv.*, Case No: 2:20-cv-13-SPC-NPM, 2021 WL 5634131, at *3 (S.D. Fla. Dec. 1, 2021) (same).

these rudimentary requests, Defendants received overbroad privilege claims and incomplete productions.

UFF and MFOL generically assert that their internal documents and communications records reflect things like "internal organizing strategies" and "internal political strategies," and are therefore privileged. *See generally* Ex. C. These boilerplate labels are insufficient to invoke the First Amendment privilege and avoid disclosure.

Moreover, Plaintiffs' objections stretch the First Amendment associational privilege far beyond its proper scope. By doing so, Plaintiffs wield the privilege as both a sword and a shield: Plaintiffs assert injuries to their associational rights (among other injuries) to establish their prima facie claims as well as their Article III standing, and then hide behind the First Amendment privilege in refusing to disclose evidence relevant to these assertions. But UFF and MFOL's organizational status does not afford them blanket immunity from discovery of their internal records. To the contrary, UFF and MFOL voluntarily initiated this lawsuit, and must play by the same discovery rules as every other plaintiff.

At bottom, UFF and MFOL appear to be operating under an unbending rule that their internal documents and communications are not discoverable—despite the First Amendment privilege being narrowly designed to protect personal member and donor information under defined circumstances, and despite Plaintiffs themselves

initiating this lawsuit. Plaintiffs should not be permitted to misuse and overextend the qualified First Amendment privilege to prevent Defendants from reviewing relevant, responsive documents necessary to test Plaintiffs' claims and prepare a defense.

## II.   FEDERAL RULE 37(A) AND LOCAL RULE 7.1(B) CONFERRAL

In an attempt to avoid Court intervention, Defendants conferred extensively with Plaintiffs over the last eight weeks. Defendants explained the legal flaws in Plaintiffs' unbounded application of the First Amendment privilege, and why documents probative of Plaintiffs' central allegations against Defendants are not immune from disclosure. Defendants also identified select requests for production in which Defendants are most interested in an effort to narrow the scope of documents at issue. Defendants then, at Plaintiffs repeated urging, endeavored to discern which of the approximately 1,400 documents on Plaintiffs' Privilege Log should be produced, using the information reflected on the Privilege Log (custodian, recipient, author, date, and subject) to identify records containing probative and non-privileged information.[3]

---

[3] The highlighting on **Exhibit C** identifies which records Defendants requested Plaintiffs to produce during conferral, based on the likely probative nature of the information in those records as reflected in the date, subject, recipient, author, and/or custodian of each record. Defendants provided this highlighted copy of the Revised Privilege Log to Plaintiffs.

Plaintiffs were still not satisfied, however, and have refused to narrow their blanket refusal to produce internal records or withdraw a single claim of privilege. On July 15, 2022, Plaintiffs doubled-down on their refusal to produce internal communications and documents, raising more than eighty new First Amendment privilege objections in a Supplemental Privilege Log. *See* Ex. D.

Defendants regrettably had no alternative but to file this Motion seeking relevant documents to which they are entitled, and which are necessary to prepare their defense.

## III.   REQUESTS AND RESPONSES AT ISSUE

In response to Defendants' First Request for Production, Plaintiffs asserted generic and boilerplate objections on multiple grounds, including various claims of privilege. *See generally* Ex. A; Ex. B. Plaintiffs have since produced documents "subject to" these objections, and also served voluminous privilege logs—the majority of which purport to identify approximately 1,200 documents that UFF, and to a lesser extent MFOL, withheld on the basis of a First Amendment privilege claim.[4] *See* Exs. C, D ("Privilege Log").

---

[4] To be clear, Defendants do not ask this Court to compel the production of *any* documents over which Plaintiffs' assert the attorney-client privilege, including the more than one hundred documents over which UFF asserts both First Amendment and attorney-client privilege objections.

Defendants advised Plaintiffs that they are primarily focused on records responsive to Requests 8, 9, 10, 11, 12, 16, 18, 20, 22, 26, and 27 to UFF, and Requests 11, 12, 17, 19, 21, 23, 25, 26, 29 and 30 to MFOL,[5] but have no idea which privilege claims withhold documents relevant to those requests. Defendants nevertheless used the limited available information to try and identify specific records on the Privilege Log that are likely probative of Plaintiffs' allegations—and critically, their standing to sue—and are therefore *not* protected by the qualified First Amendment privilege for the reasons explained below.

## IV. LEGAL STANDARDS

### a. First Amendment Privilege.

In the discovery context, the First Amendment privilege is a qualified privilege designed to protect the disclosure of information that will subject individuals to threats or harassment such that they might be dissuaded from associating, and is thus typically invoked to prevent the disclosure of an organization's private lists of individual members or contributors. *See, e.g., NIACCF, Inc. v. Cold Stone Creamery, Inc.*, No. 12-CV-20756, 2014 WL 4545918,

---

[5] Requests 26 and 27 to UFF, and Requests 29 and 30 to MFOL, appear in Defendants' Third Request for Production to UFF and MFOL, but Plaintiffs' responses and objections to those requests, *see* **Exhibits E** and **F**, incorporate earlier objections and again assert privilege objections. It is therefore unclear whether documents identified on the Privilege Log as responsive to Defendants' First Requests for Production are also responsive to Requests 26 and 27 to UFF, and Requests 29 and 30 to MFOL.

at *3 (S.D. Fla. Sept. 12, 2014) (Valle, Mag.) (recognizing that "[t]he First Amendment's associational privilege arises when a discovery request results in disclosure of a group's anonymous members, or requests similar information that goes to the heart of an organization's associational activities"); *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516CIV, 2008 WL 2686860, at *6 (S.D. Fla. June 29, 2008) ("Courts have repeatedly held that the disclosure of an organization's *membership list potentially* implicates First Amendment associational rights." (emphasis added)); *see also Buckley v. Valeo*, 424 U.S. 1, 74 (1976) (First Amendment associational rights are implicated when evidence shows "a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties"); *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958) (compelled disclosure of identities of rank-and-file members of NAACP would, based on evidence of past harms and threats, may "induce members to withdraw . . .and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure").

The First Amendment privilege does *not* immunize a plaintiff from disclosing documentary evidence of its own allegations, including those central to its claimed injuries and standing to sue. *See Fla. State Conf. of Branches and Youth Units of the NAACP v. Lee*, Case No. 21-81824-MC-MIDDLEBROOKS, 2021 WL 4891300, --

- F.Supp.3d ---- (S.D. Fla. Oct. 19, 2021) ("First, Plaintiffs do not seek to reveal the identities of any Heritage members or donors. . . . As such, the subpoenas do not seek disclosure of the information typically covered by the associational privilege."); *Cold Stone Creamery*, 2014 WL 4545918 at *4 (compelling plaintiff union to produce membership identity information because it was relevant to "whether [the union] has standing to bring this action"). Plaintiffs chose to invoke this Court's jurisdiction, and are now obligated to produce documents showing whether they can properly do so.

Even when a party meets its initial burden to show that its First Amendment rights are implicated, the Court must weigh several factors to determine whether the requesting party has a "compelling need" requiring disclosure of the requested information: (1) whether the requested information is "so relevant that it goes to the heart of the matter," (2) the "availability of the information from alternative sources," (3) "the nature of the information sought, including the likelihood of injury to the association or its members, if the desired information is released," (4) the requesting party's role in the litigation," and (5) whether the requested disclosure is the "least restrictive means" for accomplishing the requesting party's objectives, such that constitutional rights are not unnecessarily swept aside. *Christ Covenant Church*, 2008 WL 2686860 at *8 (citations and marks omitted); *accord All. of Auto. Mfrs., Inc. v. Jones*, 4:08CV555-MCR/CAS, 2013 WL 4838764, at *4 (N.D. Fla.

9

Sept. 11, 2013). As discussed below, these factors weigh in favor of Defendants' compelling need to assess the claims against them and the injuries they have been accused of inflicting.

### a. Prohibition of Boilerplate Objections and Productions "Subject To" Objections.

Generic, boilerplate objections are meaningless and not proper in the Eleventh Circuit. *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (holding that trial court abused its discretion in granting motion for protective order based on conclusory objections of overbreadth, burdensomeness, expense, and irrelevance because the objections lacked requisite specificity). Thus, in the Northern District, "[g]eneral boilerplate objections are improper and not compliant with Rule 34 or Local Rule 26.1(C)," and "the Court will deem the boilerplate objections to be a nullity." *In re Abilify (Aripiprazole) Products Liab. Litig.*, 3:16-MD-2734, 2017 WL 4399198, at *5 (N.D. Fla. Sept. 29, 2017); *accord Sharbaugh v. Beaudry*, Case No. 3:16-CV-126, 2017 WL 5988221, at *3 (N.D. Fla. May 5, 2017) ("As for Defendants' boilerplate objections (i.e., 'overbroad, vague and ambiguous, [ ] not limited to scope or time'), such objections really 'tell[ ] the court nothing,' and were criticized in judicial decisions even before the December 2015 amendments."). Indeed, Local Rule 26.1(C) plainly states that objections must be specific, and boilerplate objections "are strongly disfavored."

Responses "subject to" such objections are equally as meaningless because Defendants have no concept of the completeness of Plaintiffs' production. *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2014 WL 6473232, at *3 (S.D. Fla. Nov. 18, 2014) (Seltzer, Mag.) ("Although this practice has become commonplace, courts in the Eleventh Circuit have found that whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands." (internal marks omitted)); *Network Tallahassee*, *Inc. v. Embarq Corp.*, No. 4:10-cv-00038, 2010 WL 4569897, at *1 (N.D. Fla. Sept. 20, 2010) ("According to the motion, a discovery request was met with blanket objections and a statement that discovery would be provided 'subject to and without waiving' the objections. This is an abusive practice that has become commonplace but should end.").

## V.   MEMORANDUM OF LAW

### a.   UFF and MFOL's blanket claim of privilege over internal records far exceeds the bounds of the First Amendment privilege, and prevents Defendants and this Court from assessing Plaintiffs' asserted injuries and standing.

In order to assess and rebut the facts on which Plaintiffs rely to establish their claims—and critically, to assess Plaintiffs' alleged injuries and thus their standing to maintain this suit—Defendants must have access to the responsive records identified on the Privilege Log withheld on First Amendment Privilege grounds.

UFF and MFOL improperly wield the First Amendment privilege as both a sword and shield by voluntarily injecting issues into their prima facie case—including their associational interests, their resources, and HB 233's alleged impact on the associations and their members, among others—and then refusing to produce discovery on those issues. *See GAB Business Servs., Inc. v. Syndicate 627*, 809 F. 2d 755, 762 (11th Cir. 1987); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D. Fla. 1980). Defendants disagree that the First Amendment privilege applies here, but even if it did, "a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 614–15 (S.D. Fla. 2013). Thus, a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F. 3d 1386, 1417 (11th Cir. 1994) (citation omitted).

Here, Plaintiffs claim injuries to their associational rights and to the deployment of their resources as a means to invoke this Court's jurisdiction. They also allege that HB 233 has chilled and will continue to chill their speech and associational activities. When asked to reveal the factual basis for these allegations, Plaintiffs hide behind the First Amendment privilege. But Plaintiffs cannot have it

12

both ways, and Defendants are not obligated to blindly take UFF and MFOL at their word—whether in the Second Amendment Complaint, in their written discovery responses, or in their depositions. Defendants are entitled to probe the factual bases and the veracity of Plaintiffs' allegations through the means authorized under federal discovery rules, including requests for records.

Simply put, Plaintiffs alleged certain injuries, and now those alleged injuries are a proper subject for discovery. None of Defendants' requests seek member lists or donor lists, nor do they demand private information about any individual members or supporters, nor are the requests directed to disinterested non-parties. Defendants' requests are therefore not within the ambit of First Amendment privilege case law at all. *See, e.g., Fla. State Conf. of Branches and Youth Units of the NAACP v. Lee*, Case No. 21-81824-MC-MIDDLEBROOKS, 2021 WL 4891300, --- F.Supp.3d ---- (S.D. Fla. Oct. 19, 2021) ("First, Plaintiffs do not seek to reveal the identities of any Heritage members or donors. . . . As such, the subpoenas do not seek disclosure of the information typically covered by the associational privilege."); *NIACCF, Inc. v. Cold Stone Creamery, Inc.*, No. 12-CV-20756, 2014 WL 4545918, at *3 (S.D. Fla. Sept. 12, 2014) (Valle, Mag.); *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516CIV, 2008 WL 2686860, at *6 (S.D. Fla. June 29, 2008).

Moreover, discovery requests that probe a plaintiff's factual claims and standing are decidedly proper—even when those requests *do* seek information about

members, which Defendants' requests do not. For example, in *Christ Covenant Church*, the Court ordered a plaintiff church to disclose the identities of church members to the defendant municipality over the church's First Amendment privilege objection, explaining that the requested documents would allow the defendant to "test the Church's contentions" and "evaluate the Church's claims." 2008 WL 2686860 at *9, *12. The Court also confirmed that while not "outcome determinative," a "requesting party's status as a defendant should be considered." *Id.* at *9.

Likewise, in *Cold Stone Creamery*, the Court ordered an employee union to disclose the identities of its members because their identities were "relevant to the facts of th[e] case, including standing to sue," and indeed, went "to the heart of th[e] case, as it could potentially determine whether [the union] has standing . . . .") 2014 WL 4545918, at *3–*4. The Court concluded its analysis by noting that "Cold Stone is the named Defendant in this litigation and, as in *Christ Covenant Church*, has a right to investigate the factual assertions made by Plaintiff." *Id.*

The facts here are strikingly similar: the requesting parties are Defendants (not Plaintiffs), *see id.*; their requests go to the "heart" of Plaintiffs' case, including their standing to sue, *see id*; and are necessary to "test the [Plaintiffs'] contentions" and evaluate their claims, *Christ Covenant Church*, 2008 WL 2686860 at *9, *12.

14

Requests for records and communications aimed squarely at the bases of Plaintiffs' own allegations are highly relevant to both the merits of Plaintiffs' claims and the grounds for Defendants' defenses. The requested records might reveal, for example: how UFF and MFOL view the impacts of any of the three challenged provisions on its members or on the organization more broadly; whether and how the organizations or their members perceive any present injury; whether and how the organizations and their members have reacted to HB 233's passage; whether and how the organizations have diverted resources as a result of HB 233; and whether Plaintiffs' chilling allegations are reasonable and supported by fact. At a minimum, Plaintiffs' responsive records will bear on the credibility of the allegations of harm and impact that UFF and MFOL assert in their Second Amended Complaint and in their interrogatory answers. It is impossible for Defendants to determine with specificity which of the hundreds of pages of entries on the Privilege Log might contain such probative information.

Plaintiffs' boilerplate descriptions primarily claim protection over documents regarding "internal organizing strategy" or "internal political strategy," as well as a smaller number of records allegedly related to things like "grievance procedures" or "strategic partners," among other scattered examples. For associations whose missions are dedicated to organizing and engaging in the political process, these overbroad characterizations could apply to every single record that any advocacy

organization or union generates—and in fact, UFF and MFOL have apparently taken the position that they *do* apply, without exception, to their internal communications and records.

Obviously, UFF and MFOL do not enjoy a special status under the rules of discovery that grants them immunity from disclosing records related to their own complaint allegations. During conferral, Plaintiffs provided *no* legal authority for this position. Instead, Plaintiffs cited out-of-circuit decisions that are distinguishable or support Defendants' position. For example, *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 11-MC-10, 2011 WL 5118601 (C.D. Ill. Oct. 27, 2011), involved non-party associations that sought to quash subpoenas served by plaintiff municipalities. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164, 2007 WL 852521 (D. Kan. March 16, 2007), likewise involved a plaintiff hospital's subpoena for documents related to a non-party hospital association's lobbying efforts. In *Apple Inc. v. Match Group, Inc.*, 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021), the defendant successfully invoked the First Amendment privilege as to communications with and records from non-parties that the Court deemed irrelevant to the plaintiff's case. And in *Sierra Club v. Union Electric Company*, No. 4:14-cv-00408-AGF, 2015 WL 9583394 (E.D. Mo. Dec. 31, 2015), the Court explicitly acknowledged that plaintiffs were required to produce communications related to their injuries. *Id.* at *4 ("But even if such communications existed—for

example, if the Standing Members sent emails indicating that their injuries were exaggerated or non-existent—those communications would 'relate to' the Standing Members' alleged injuries and would have, according to Plaintiff, been produced. And if such communications do exist, but have not been produced, Plaintiff must do so promptly.").

These cases offer no refuge for Plaintiffs, who are just that—plaintiffs. They are not disinterested non-parties, and they are not defendants involuntarily subjected to this Court's jurisdiction. And the documents that Defendants seek are those that "relate to" Plaintiffs' own allegations, including Plaintiffs' claimed injuries. *See id.*

For these reasons, and for those discussed above, Defendants' requests do not implicate the First Amendment privilege in the first place. But even if Defendants' requests did trigger a First Amendment privilege analysis, Plaintiffs cannot meet their initial burden to demonstrate a reasonable likelihood that production of the requested documents would chill their associational rights. *See Flynn v. Square One Distribution, Inc.*, Case No. ---, 2016 WL 2997673, at *3 (M.D. Fla. May 25, 2016) (finding that non-party deponent did not meet burden to invoke First Amendment privilege because "his opinion about what other members [of an organization] will and will not do is speculation and conjecture . . . . not based on historical facts, personal observations, personal experience, or first-hand knowledge" and thus did not establish an objectively reasonable probability that members' associational

rights would be chilled). Any assertion by Plaintiffs that their associational rights would be chilled by responding to Defendants' discovery requests—which ask for nothing more than the facts underlying what UFF and MFOL have publicly and voluntarily vocalized in their own pleadings (as well as in the press)—is based on pure speculation and conjecture.

But even if UFF and MFOL could meet this initial burden, the factors identified in cases like *Christ Covenant Church* weigh decidedly in Defendants' favor. *See also Alliance of Auto Manufacturers v. Jones*, No. 4:08cv555–MCR/CAS, 2013 WL 4838167 (N.D. Fla. Sept. 11, 2013) (Stampelos, Mag.) (explaining that under a First Amendment privilege analysis, courts evaluate "(1) the relevance of the information sought; (2) [the requesting party's] need for the information; (3) whether the information is available from other sources; (4) the nature of the information sought; and (5) whether [the party resisting production] have placed the information in issue.").

First, UFF and MFOL initiated this lawsuit and alleged that Defendants and HB 233 caused them harm. Plaintiffs' own allegations against Defendants necessitated the discovery requests that they now resist. *See Christ Covenant Church*, 2008 WL 2686860 at *9.

Second, Defendants cannot obtain the requested information from any other source. Only UFF and MFOL can provide UFF and MFOL's records. Moreover,

deposition testimony is an insufficient substitute for written records for at least two reasons: Defendants cannot develop their questioning blindly, and Plaintiffs are unlikely to divulge during deposition information they believe, albeit incorrectly, to be privileged. *See id.* (recognizing that deposition testimony was an insufficient substitute for written discovery because "it is precisely to have the means to challenge [the plaintiff's] otherwise untested, anticipated factual assertions that the Town seeks to obtain the Church members' names"). Plaintiffs are not entitled to manipulate the flow of information exchanged in discovery to best suit their preferences.

Third, and perhaps most importantly, Plaintiffs' asserted injuries are central to their standing to challenge HB 233's constitutionality. The injury they claim to have suffered and the alleged impact of HB 233 on UFF and MFOL is therefore critical for Defendants to establish their defense and challenge Plaintiffs' prima facie claims and standing. *See Cold Stone Creamery, Inc.*, 2014 WL 4545918, at *3–*4.

Finally, there is no reasonable likelihood that UFF and MFOL's First Amendment rights will be infringed. Defendants have not requested sensitive information about—or even the names of—either organization's members, such that any individual's associational rights would be implicated. Moreover, Plaintiffs' pleadings and papers in this case make clear that Plaintiffs' view of HB 233 and Defendants are not closely-guarded secrets that must be immunized from disclosure

to the entities they sued. Even assuming their associational rights are implicated, however, UFF and MFOL cannot overcome the remaining factors that weigh soundly in favor of Defendants' right to investigate the claims Plaintiffs assert against them.

At bottom, Plaintiffs put their associational interests and activities at issue in order to invoke this Court's jurisdiction and pursue claims against Defendants founded on precisely those interests. UFF and MFOL's all-encompassing reliance on the First Amendment privilege as both a shield and a sword is legally incorrect. The First Amendment privilege is not properly invoked in response to Defendants' requests in the first instance, but even as applied, the privilege cannot justify withholding indisputably relevant records bearing on Plaintiffs' claims and their ability to continue pursuing their claims before this Court.

### b. The Privilege Log improperly repeats over one thousand boilerplate privilege objections.

Like Plaintiffs' written responses to Defendants' discovery requests, *see* Exs. A and B, the Privilege Log consists of hundreds of pages of boilerplate privilege claims, which are improper. *See Hinson v. Titan Ins. Co.*, Case No.: 3:13cv394/MCR/EMT, 2014 WL 11511677, at * 2 (N.D. Fla. Apr. 2, 2014) (quoting *Paet, Marwick, Mitchell & Co. v. West*, 748 F. 2d 540, 542 (10 Cir. 1984) ("[T]he party interposing an objection has the burden of establishing its claim of privilege or protection; a baldfaced assertion is insufficient.")); *see also AH Biscayne Inv'r, LLC*

*v. 1st Sun Props., LLC*, 16-23573-CIV, 2018 WL 1182578, at \*3 (S.D. Fla. Mar. 7, 2018) ("A proper privilege log should therefore contain," among other information, "the title and description of the document . . . the subject matter addressed in the document . . . the purpose(s) for which it was prepared or communicated; and . . . the specific basis for the claim that it is privileged") (marks omitted).

Over and over, MFOL, and by a *much* larger degree UFF, generically describe each responsive document as an "[i]internal communication" or an "[i]nternal document regarding confidential organizing strategy," an "internal draft" document reflecting the same, an "[i]nternal document regarding confidential political strategy," or a "[d]raft internal document reflecting notes and edits from strategic partners and regarding confidential organizing strategy," and withhold the document on First Amendment grounds. *See, e.g.,* Ex. C at 12–384; Ex. D at 5–17.

Plaintiffs have inexplicably demanded that Defendants provide a list of individual documents from the Privilege Log's twelve-hundred-plus objections that Defendants believe would benefit from conferral. Not only does this unreasonable request turn Plaintiffs' burden to establish their own privilege objections on its head, the request is simply impossible for Defendants to accomplish based on Plaintiffs' boilerplate objections. Plaintiffs' blanket approach to claiming the First Amendment privilege over *all* internal records and communications further frustrates such assessment, and casts doubt on the credibility of each claim of privilege.

21

Nevertheless, Defendants have attempted to use the limited information at their disposal to identify which communications and records on the Privilege Log—which are concededly responsive to Defendants' requests—are likely to be most probative of Plaintiffs' central allegations and their standing. *See* Ex. C.

## VI.   CONCLUSION AND RELIEF REQUESTED.

For the foregoing reasons, Defendants respectfully request an Order from this Court:

a) Overruling the First Amendment privilege objections raised by UFF and MFOL in the Privilege Log;

b) Compelling UFF to produce documents identified in the Privilege Log subject to the overruled First Amendment privilege objections that are responsive to Requests 8, 9, 10, 11, 12, 16, 18, 20, 22, 26, and 27;

c) Compelling MFOL to produce documents identified in the Privilege Log subject to the overruled First Amendment privilege objections that are responsive to Requests 11, 12, 17, 19, 21, 23, 25, 26, 29, and 30; and

d) Granting any further relief that this Court deems necessary to compel Plaintiffs' compliance with their discovery obligations.

Respectfully submitted on July 26, 2022.

/s/ George T. Levesque
George T. Levesque (FBN 555541)
James Timothy Moore, Jr. (FBN 70023)
Ashley H. Lukis (FBN 106391)
Patrick M. Hagen (FBN 1010241)
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
Facsimile: 850-577-3311
George.Levesque@gray-robinson.com
Tim.Moore@gray-robinson.com
Ashley.Lukis@gray-robinson.com
Patrick.Hagen@gray-robinson.com
Counsel for Defendants

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B) and Federal Rule of Civil Procedure 26(c), the undersigned certifies that counsel for Defendants conferred in good faith with counsel for Plaintiffs regarding the relief requested in this Motion, but were unable to reach resolution.

*/s/ George T. Levesque*
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned certifies that this Motion contains 4,963 words.

/s/ George T. Levesque
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on July 26, 2022, the foregoing document has been served by the Court's CM/ECF system which will serve a copy via email on all counsel of record.

*/s/ George T. Levesque*
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.